**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Cecil HOLLOWAY, Jeffrey Rudder,
Defendants–Appellants.**

**No. 91–8109.**

United States Court of Appeals,
Eleventh Circuit.

Sept. 4, 1992.

James K. Jenkins, Maloy & Jenkins, Atlanta, Ga., for Holloway.

Paul S. Kish, Federal Defender Program, Inc., Atlanta, Ga., for Rudder.

William R. Toliver, Asst. U.S. Atty., Atlanta, Ga., for U.S.

Before BIRCH, Circuit Judge, JOHNSON\*, and BOWNES\*\*, Senior Circuit Judges.

BOWNES, Senior Circuit Judge.

Defendants Jeffrey Rudder and Cecil Holloway appeal their convictions for conspiracy and unlawful taking of goods moving in interstate commerce. Holloway also appeals his sentence. We affirm the convictions of Rudder and Holloway. We vacate the sentence of Holloway and remand for resentencing.

## Background

Holloway was employed as a security guard for ARC Security Service. ARC was under contract to provide security for Southeastern Freight Lines, Inc., a carrier and shipper of foreign and interstate freight. Holloway was assigned by ARC Security to provide security at Southeastern's trailer yard.

While employed at Southeastern, Holloway began to deliver large quantities of clothing to Jay Preston Hill, who operated a booth at a flea market in suburban Atlanta. Hill would locate a buyer, deliver the clothing, and share the proceeds with Holloway.

On September 9, 1988, Holloway contacted Hill and asked him to come to the Southeastern yard to look at ASICS gore-tex jogging suits. When Hill arrived at the yard Holloway took him to where the suits were located. Hill proceeded to take twenty jogging suits that night. The next day Hill returned to the yard and took an additional twenty-four boxes of jogging suits. Each box contained twenty suits.

A few weeks after the theft of the jogging suits, Southeastern fired Holloway, thus cutting off his access to the freight yard. Holloway promptly informed Hill that he knew of another security guard, defendant Rudder, who would be willing to let them into Southeastern's trailer yard. Hill obtained a tractor from a friend. He also rented storage space at a local storage lot. Hill and Holloway then rented a forklift and three rental trucks. Holloway, using false identification, signed the rental agreements under an assumed name. Rental clerks later identified Holloway as the person who actually signed the rental agreements and Hill as accompanying Holloway during the rental of the trucks and forklift.

A few days before October 21, 1988, Holloway and Hill went to the Southeastern yard during Rudder's shift as a security guard. Holloway introduced Hill to Rudder. The three agreed to steal entire trailers of merchandise from the freight yard and formulated a plan to do so. They planned to use Southeastern documents to identify the trailers they wanted. Rudder would then call Holloway by telephone to notify him when the trailers could be taken without detection. Holloway was to relay the information by radio to Hill, who would then drive the tractor to the gate of the yard where Rudder would allow him to

\* See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

\*\* Honorable Hugh H. Bownes, Senior U.S. Circuit Judge for the First Circuit, sitting by designation.

enter. Rudder would then assist Hill in locating the trailers that they planned to steal. The tractor would be attached to the selected trailers and driven out of the yard.

Using this plan, the three stole four trailers between October 21 and October 24 from the Southeastern yard. Of the four trailers, one was empty. The other three contained women's shoes, armchairs, and rattan furniture.

Hill was subsequently arrested while attempting to sell the shoes to undercover FBI agents. Holloway and Rudder were also arrested. A grand jury returned a six-count indictment charging Holloway and Rudder and naming Hill as an unindicted co-conspirator.[1] The indictment charged the following: (1) Holloway conspired with Hill to steal and unlawfully take from a trailer storage facility a shipment of ASICS–Tiger athletic clothing in violation of 18 U.S.C. § 659; (2) Holloway and Hill stole a partial shipment of ASICS–Tiger athletic clothing; (3) Holloway, Rudder, and Hill conspired to steal and unlawfully take from a trailer storage facility a shipment of women's shoes, rattan furniture, and wooden armchairs in violation of 18 U.S.C. § 659; (4) Holloway, Rudder, and Hill stole a shipment of Meldisco women's shoes in violation of 18 U.S.C. § 659; (5) Holloway, Rudder, and Hill stole a shipment of rattan furniture in violation of 18 U.S.C. § 659; and (6) Holloway, Rudder, and Hill stole a shipment of wooden armchairs in violation of 18 U.S.C. § 659.

Both Rudder and Holloway pled not guilty. Prior to trial, Rudder moved for severance under Federal Rule of Criminal Procedure 8(b). The trial court denied the motion. A jury found defendants guilty on all charges.

Holloway was sentenced to thirty months incarceration, two years of supervised release, and restitution in the amount of $155,287.70. Rudder was sentenced to fifteen months incarceration, two years of supervised release, and restitution in the amount of $4,095.20.

**1.** Hill pled guilty to one count of theft and testified under a grant of immunity against Rud-

### Analysis

Rudder claims that the trial court erred by denying his motion for severance. Holloway and Rudder jointly argue that the lower court abused its discretion by denying a motion in limine concerning eye-witness identification testimony. Holloway raises three other issues: (1) whether the trial court abused its discretion by denying his request for a continuance to obtain independent expert document analysis for purposes of handwriting and fingerprint comparison; (2) whether he is entitled to a reversal of one conspiracy conviction because there was insufficient evidence for a jury to find two conspiracies; (3) whether the court improperly calculated the amount of his share of restitution.

### A. *Joinder*

█ Rudder argues that his indictment was improperly joined with that of Holloway. He contends that for two defendants' indictments to be joined the offenses must arise out of the same series of transactions. Because the indictment charged two conspiracies, one of which Rudder took no part in, he argues that his indictment for conspiracy and theft was not part of the "same series of transactions" as that of the indictments for conspiracy and theft that charged only Holloway. Rudder contends that his conviction therefore should be reversed.

Federal Rule of Criminal Procedure 8(b) states:

> Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

der and Holloway.

In a challenge under Rule 8(b) we review " 'the propriety of joining two or more defendants in a single indictment in the first instance.' " *United States v. Wilson,* 894 F.2d 1245, 1252–53 (11th Cir.1990) (quoting *United States v. Morales,* 868 F.2d 1562, 1567 (11th Cir.1989)), *cert. denied,* — U.S. ——, 110 S.Ct. 3284, 111 L.Ed.2d 792 (1990). We examine *de novo* the allegations on the fact of the indictment to determine whether joinder was proper. *Morales,* 868 F.2d at 1567.

■ For joinder to be proper defendants must have participated in the "same series of acts or transactions." Fed.R.Crim.P. 8(b). "In order to meet the 'same series of acts or transaction' requirement of Rule 8(b) the 'government must demonstrate that the acts alleged are united by substantial identity of facts and/or participants.' " *Wilson,* 894 F.2d at 1253 (quoting *Morales,* 868 F.2d at 1569). Each participant need not participate in all acts or even know the other participants' roles in the ventures. *United States v. Andrews,* 765 F.2d 1491, 1496 (11th Cir.1985), *cert. denied,* 474 U.S. 1064, 106 S.Ct. 815, 88 L.Ed.2d 789 (1986).

■ We need not address whether joinder was proper, however, because we find that any possible misjoinder was harmless error. In *United States v. Lane,* 474 U.S. 438, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986), the Supreme Court held that "an error involving misjoinder 'affects substantial rights' and requires reversal *only* if the misjoinder results in actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Id.* at 449, 106 S.Ct. at 732 (emphasis added) (citation omitted); *see also United States v. Fernandez,* 892 F.2d 976, 985 n. 8 (11th Cir.), *cert. dismissed,* 495 U.S. 944, 110 S.Ct. 2201, 109 L.Ed.2d 527 (1989). We see no indication in the record that the joinder influenced the jury verdict nor did Rudder avert to any such prejudice. Rudder only argued that mis-

joinder was prejudicial *per se.* We therefore find no reversible error.

### B. *Eyewitness Testimony*

■ Rudder and Holloway argue that the trial court abused its discretion by denying their motion in limine to admit the testimony of an expert in eyewitness identification. This argument is without merit. The established rule of this circuit is that such testimony is not admissible. *See United States v. Benitez,* 741 F.2d 1312, 1315 (11th Cir.1984), *cert. denied,* 471 U.S. 1137, 105 S.Ct. 2679, 86 L.Ed.2d 698 (1985); *United States v. Thevis,* 665 F.2d 616, 641 (5th Cir. Unit B), *cert. denied,* 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982). We see no reason to depart from our precedent in this case.

### C. *Denial of Continuance*

■ Holloway argues the court abused its discretion by denying his request for a continuance on the first day of trial to obtain independent scientific analysis of the rental agreements allegedly signed by Holloway. He contends that the government violated Federal Rule of Criminal Procedure 16(a)(1)(D) by failing to disclose prior to the first day of trial that the truck rental agreements had been subject to fingerprint and handwriting analysis prior to trial.[2]

The fingerprint analysis found latent fingerprints on the documents but none were those of defendants or Hill. The analyst noted in his report that there were similarities between the signatures on the various agreements but that he could not conclude whether all the documents were signed by the same person or whether Holloway had signed any of the documents. Holloway asserts that these reports were "material to his defense" and the government should therefore have disclosed them. He argues that because government violated Rule 16,

---

**2.** Rule 16(a)(1)(D) states in pertinent part:
Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph any results or reports of … scientific tests or experiments, or copies thereof, which are within the possession, custody,

or control of the government … which are *material to the preparation of the defense* or are intended for use by the government as evidence in chief at the trial.
(Emphasis added).

the trial court abused its discretion by denying his motion for a continuance.

We find that the district court did not abuse its discretion by denying a continuance. *See United States v. White,* 846 F.2d 678, 691 (11th Cir.), *cert. denied,* 488 U.S. 984, 109 S.Ct. 538, 102 L.Ed.2d 568 (1988); *United States v. Burkhalter,* 735 F.2d 1327, 1329 (11th Cir.1984). Inconclusive tests are not material to the defense. "Materiality means more than that the evidence in question bears some abstract logical relationship to the issues in the case. There must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant to alter the quantum of proof in [her] favor." *United States v. Ross,* 511 F.2d 757, 762 (5th Cir.) (citation omitted), *cert. denied,* 423 U.S. 836, 96 S.Ct. 62, 46 L.Ed.2d 54 (1975).[3] We see no indication that the reports proved anything other than that Holloway's latent fingerprints were not present on the documents and that it was unclear who had signed the documents. Moreover, the government disclosed the existence of the rental documents during pretrial discovery. Holloway could have independently had the documents subjected to fingerprint and handwriting analysis.

█ Further, the trial court ordered the government to turn over the reports to defendant on the first day of trial. Under Federal Rule of Criminal Procedure 16(d)(2), the trial court *"may* order [a discovery order violator] to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed." (Emphasis added); *see also United States v. Chestang,* 849 F.2d 528, 532 (11th Cir.1988). Even if the government had violated Rule 16(a)(1)(D), it was thus well within the trial court's discretion to remedy the violation by ordering compliance. Because Holloway failed to demonstrate adequately prejudice from any delay in receiving the reports, we find no abuse of discretion.

### D. One or Two Conspiracies?

█ Holloway argues that there was insufficient evidence to convict him of two conspiracies. He contends that the evidence indicated that the scheme consisted of a "single seamless conspiracy." He argues for reversal of one of his two conspiracy convictions because there was a material variance between his indictment for two conspiracies and the evidence adduced at trial.

"The existence of one or multiple conspiracies is a question of fact to be decided by the jury." *United States v. Ruwe,* 790 F.2d 845, 849 (11th Cir.1986); *see also United States v. Allison,* 908 F.2d 1531, 1536 (11th Cir.1990), *cert. denied,* ── U.S. ──, 111 S.Ct. 1681, 114 L.Ed.2d 77 (1991); *United States v. Khoury,* 901 F.2d 948, 956 (11th Cir.1990). In this case, however, the jury was not instructed on this issue. The court did not inform the jury that if it found a single conspiracy it could not find defendant guilty on both Counts I and II. But defendant did not request such an instruction and failed to object timely to the instructions given. Our review of this issue, therefore, is limited to plain error. Fed.R.Crim.P. 52(b); *Ruwe,* 790 F.2d at 849; *United States v. Anderson,* 782 F.2d 908, 914 (11th Cir.1986).

To determine whether a jury could have found beyond a reasonable doubt that two conspiracies existed "we consider three factors: (1) whether a common goal existed; (2) the nature of the criminal scheme; and (3) the overlapping of the participants in the various dealings of the conspiracy." *Ruwe,* 790 F.2d at 849 (quoting *United States v. Coles,* 755 F.2d 748, 764 (11th Cir.1985)); *see also Khoury,* 901 F.2d at 956.

█ Reviewing the factual record in the light most favorable to the government we find no plain error. A jury could have found beyond a reasonable doubt that two separate schemes constituting separate conspiracies existed. Though both conspiracies concerned an agreement to steal mer-

---

**3.** We have adopted the decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981, as binding precedent of the Eleventh Circuit. *Bonner v. Pritchard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

chandise from Southeastern, each conspiracy concerned different merchandise. Further, the methods and participants differed in each conspiracy. In the first conspiracy, Holloway allowed Hill, who was driving a van, into the freight yard. Hill proceeded to load the van with jogging suits. In the second conspiracy, because Holloway had been fired from his job in the interim, it was Rudder who allowed Hill and Holloway into the yard to steal merchandise. Hill and Holloway utilized a rented tractor to steal entire trailers of merchandise. There was no reversible error.

### E. *Restitution*

Finally, Holloway argues that the trial court improperly calculated the restitution he owes as part of his sentence by relying solely on information in the presentencing report. He argues that the report overstated the wholesale value of the stolen merchandise, thereby overassessing him by more than $50,000. He contends that the evidence adduced at trial contradicted the valuations contained in the presentencing report. The government argues that any objections to the amount of restitution have been waived because defendant failed to object to the presentencing report or the court's sentence.

We need not address the merits of this issue because the trial court failed to comply with the requirements delineated in *United States v. Jones,* 899 F.2d 1097 (11th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 275, 112 L.Ed.2d 230 (1990). In *Jones,* we stated,

> Where the district court has not elicited fully articulated objections following the imposition of sentence, this court will vacate the sentence and remand for further sentencing in order to give the parties an opportunity to raise and explain their objections. Where the district court has offered the opportunity to object and a party is silent or fails to state the grounds for objection, objections to the sentence will be waived for the purpose of appeal, and this court will not entertain an appeal based upon such objections unless refusal to do so would result in manifest injustice.

*Id.* at 1103. We require "fully articulated objections" for two reasons: (1) a well-made objection may permit the court to cure an error, perhaps avoiding the need for appeal; and (2) an objection may narrow the issues on appeal. *See United States v. Snyder,* 941 F.2d 1427, 1428 (11th Cir.1991) (per curiam).

The court in this case failed to ask whether there were any objections to the sentence after it sentenced Holloway. It asked only if there was "anything else." Previously we have held that such a question is inadequate for purposes of "eliciting fully articulated objections." *See Snyder,* 941 F.2d at 1428. Furthermore, it is not a mere "technical" violation of *Jones. See United States v. Cruz,* 946 F.2d 122, 124 n. 1 (11th Cir.1991) (finding "technical violation" of *Jones* but holding that record sufficient for appeal). Because defendant failed to object to the presentencing report or the sentence, we do not have a developed sentencing record to review. We therefore vacate the sentence and remand for resentencing.

### Conclusion

We affirm the convictions of Rudder and Holloway. We vacate the sentence of Holloway and remand for resentencing. *Affirmed* in part, *vacated* and *remanded* in part.