United States Court of Appeals,

Eleventh Circuit.

No. 95-8102.

UNITED STATES of America, Plaintiff-Appellee,

v.

Fred SMITH, Defendant-Appellant.

June 6, 1997.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:93-CR-55-HTW), Horace T. Ward, Judge.

Before BLACK, Circuit Judge, and FAY and ALARCON[*], Senior Circuit Judges.

PER CURIAM:

Defendant Fred Smith appeals from his conviction on a two-count indictment charging him with bank robbery and use of a firearm in violation of 18 U.S.C. § 924(c). We affirm.

## I. FACTS AND PROCEDURAL HISTORY

On January 11, 1993, after 10:00 a.m., a lone individual entered and robbed the Buckhead branch of Merchant Bank of Atlanta. The robber approached the window of teller Diane Hansek, asked for some change, and then pulled out a gun and asked for all her money. Hansek and two other witnesses to the robbery described the robber as a black male with a clean-shaven face wearing a white, snap-brim cap. Hansek described the gun as a revolver with a brown handle and silver barrel, while the other two witnesses described it as a silver-plated automatic. After the robber exited the building, one of the other witnesses ran out the back door and saw the robber drive off rapidly in a reddish-orange car that looked like a Mustang.

To assist in apprehending the bank robber, law enforcement officials sent photographs from the video surveillance camera to Atlanta television stations. The next day, the local FBI office received a phone call from Robert Lun, an inmate in the Atlanta Federal Penitentiary. Lun, who is

---

[*]Honorable Arthur L. Alarcon, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

black, had seen the televised photographs and identified the defendant Fred Smith as the perpetrator of the Merchant Bank robbery.

Smith was arrested on January 15, 1993. At the time of the arrest, Smith identified himself as Victor Eugene Smith and carried a false driver's license in that name. Further investigation revealed that on January 5, 1993, a person using the Victor Eugene Smith driver's license purchased a steel-colored, 9 millimeter semi-automatic Taurus handgun at an Atlanta pawnshop. On January 7, 1993, Smith had purchased an orange 1984 Mercury Capri and had the title put in the name of Victor Smith. The Victor Eugene Smith driver's license was also used on January 11, 1993, to rent room 52 at the Relax Inn in Atlanta. The motel clerk identified Smith as the individual who rented the room.

As a result of a tip to the police, room 52 was placed under surveillance on January 12, 1993, the day after the Merchant Bank robbery. Smith was never seen there, but police observed Terry Walker enter and leave the room several times over the three-day surveillance. Terry Walker was arrested for bank robbery the same day as Smith.

Terry Walker had robbed a SouthTrust Bank branch on Moreland Avenue in Atlanta on January 11, 1993, three hours after the Merchant Bank robbery. During the SouthTrust robbery, Terry Walker used two "bait" bills, the serial numbers of which were traced to the Merchant Bank robbery. He used a handgun described as silver and nickel-plated. He also wore a baseball cap that was found in a subsequent search of room 52 at the Relax Inn. Terry Walker had been convicted of bank robbery in February 1994.

Five weeks after the Merchant Bank robbery, the FBI set up a photographic array and brought in the three Merchant Bank eyewitnesses to identify the robber. Two of the witnesses identified Smith as the robber, but Hansek selected another person's photograph.

Smith was tried in October 1994 for the Merchant Bank robbery and for use of a firearm in violation of 18 U.S.C. § 924(c). The government sought to introduce evidence of three additional bank robberies, including the SouthTrust robbery. The government offered that evidence as proof

that Smith, along with Terry Walker, participated in a crime spree. The district court excluded all that evidence, with the exception of evidence related to the SouthTrust robbery. The district court found that the SouthTrust robbery evidence was inextricably intertwined with the Merchant Bank robbery. Moreover, the district court refused to exclude the evidence under Federal Rule of Evidence 403, concluding that the probative value of the evidence was not substantially outweighed by its prejudicial effect.

The government's case in chief included testimony from the three eyewitnesses to the Merchant Bank robbery. The government also called an eyewitness to the SouthTrust robbery. Terry Walker's indictment, judgment and commitment form on the SouthTrust robbery were admitted into evidence. There was also testimony with regard to the Merchant Bank bait bills used at the SouthTrust robbery. The district court also admitted the baseball cap found in room 52 of the Relax Inn, which was the same baseball cap Terry Walker wore in the SouthTrust robbery.

Defendant Smith offered as his first witness Dr. Brian Cutler, an expert witness in eyewitness identification. Smith made an extensive offer of proof outside the presence of the jury with regard to Dr. Cutler. His proposed testimony involved scientific research that showed eyewitness identification could be unreliable under certain circumstances. Dr. Cutler further proposed to testify that several of those circumstances were present in the Merchant Bank robbery: disguise, cross-racial identification, weapons focus, presentation bias in law enforcement lineup, delay between the event and the time of identification, stress, and eyewitness certainty as a predictor of accurate identification.

The district court excluded Dr. Cutler's proposed testimony in its entirety, holding that although the proposed testimony was relevant, it would not assist the trier of fact. Alternatively, the district court held that the probative value of the testimony was outweighed by the possible danger of misleading or confusing the jury.

The jury convicted Smith on both the bank robbery count and the use of a firearm count. The court sentenced Smith to 336 months of imprisonment, and Smith appealed.

II. ANALYSIS

Smith raises two issues on appeal. First, Smith argues that the district court erroneously excluded the expert testimony of Dr. Cutler with regard to eyewitness reliability. Second, Smith argues that the evidence with regard to the SouthTrust robbery was prejudicial and should not have been admitted. The law is that, "[a] district court's decision to admit or exclude evidence will not be disturbed on appeal absent a clear abuse of discretion." *United States v. Antonietti,* 86 F.3d 206, 207 (11th Cir.1996).

A. *Expert Testimony Regarding Eyewitness Reliability*

Smith argues that the district court abused its discretion in excluding Dr. Cutler's expert testimony regarding eyewitness reliability. This Court has consistently looked unfavorably on such testimony. In *United States v. Thevis,* 665 F.2d 616, 641 (5th Cir. Unit B), *cert. denied,* 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982), we held that the district court had not abused its discretion in excluding expert testimony regarding eyewitness reliability. Furthermore, we stated:

> To admit such testimony in effect would permit the proponent's witness to comment on the weight and credibility of opponents' witnesses and open the door to a barrage of marginally relevant psychological evidence. Moreover, we conclude, as did the trial judge, that the problems of perception and memory can be adequately addressed in cross-examination and that the jury can adequately weigh these problems through common-sense evaluation.

*Id.* That attitude of disfavor continued in later cases, where this Court extended *Thevis* and held that expert testimony regarding eyewitness reliability was inadmissible. *United States v. Holloway,* 971 F.2d 675, 679 (11th Cir.1992), *cert. denied,* 507 U.S. 962, 113 S.Ct. 1390, 122 L.Ed.2d 764 (1993); *United States v. Benitez,* 741 F.2d 1312, 1315 (11th Cir.1984), *cert. denied,* 471 U.S. 1137, 105 S.Ct. 2679, 86 L.Ed.2d 698 (1985). We found support for that position in the nearly unanimous stance taken by other circuits in affirming the exclusion of such testimony. *See Thevis,* 665 F.2d at 641-42 (citing cases); *see also United States v. Brien,* 59 F.3d 274, 277 (1st Cir.) (citing cases) ("Appeals courts have generally upheld rulings excluding such evidence."), *cert. denied,* --- U.S. ---- , 116 S.Ct. 401, 133 L.Ed.2d 320 (1995); *United States v. Harris,* 995 F.2d 532, 534 (4th Cir.1993)

(citing cases) ("Until fairly recently, most, if not all, courts excluded expert psychological testimony on the validity of eyewitness identification.").

Smith asks this Court to reconsider its stance in light of the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and in light of nascent case law more receptive to expert testimony on eyewitness reliability.

Smith contends that the *Daubert* decision "mandate[s] that this Court reassess it's position ... regarding the admissibility of expert eyewitness evidence." In *Daubert,* the Supreme Court established a two-part test under Federal Rule of Evidence 702 for the admissibility of expert testimony: a trial judge must determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Id.* at 592, 113 S.Ct. at 2796. In so doing, the Court rejected the more restrictive rule from *Frye v. United States,* 293 F. 1013, 1014 (D.C.Cir.1923), that required scientific evidence to be "generally accepted" in order to be admissible. *Daubert*, 509 U.S. at 587, 113 S.Ct. at 2793.

Smith argues that *Daubert* "lower[ed] the standard for admissibility of expert evidence" and thus opens the door for admitting expert testimony regarding eyewitness reliability. Even assuming that Smith is correct in that characterization of *Daubert,* the question remains as to whether our precedent conflicts with the new standard announced in *Daubert.* We have held that a district court does not abuse its discretion when, after examining the proffered testimony, the court excludes it. *Thevis,* 665 F.2d at 641. Most recently, we have held that expert testimony regarding eyewitness reliability is inadmissible per se. *Holloway,* 971 F.2d at 679; *Benitez,* 741 F.2d at 1315. We need not decide whether the post-*Thevis* per se inadmissibility rule decisions conflict with *Daubert,* because we conclude that our holding in *Thevis* is in accord with *Daubert,* and that is all that is necessary to dispose of an appeal in which a district court has excluded the proffered testimony.

The first prong of the *Daubert* test requires that the expert testimony involve scientific knowledge. That requirement is not in contention here. The government has not questioned in this case the scientific validity of expert testimony regarding eyewitness reliability. *But see United*

5

*States v. Rincon,* 28 F.3d 921, 924-25 (9th Cir.) (affirming district court's ruling that testimony was not related to a scientific subject), *cert. denied,* 513 U.S. 1029, 115 S.Ct. 605, 130 L.Ed.2d 516 (1994); *United States v. Watson,* 587 F.2d 365, 369 (7th Cir.1978) (affirming exclusion of expert testimony because scientific field inadequately developed), *cert. denied,* 439 U.S. 1132, 99 S.Ct. 1055, 59 L.Ed.2d 95 (1979). The district court explicitly held that the proposed testimony is scientific knowledge, and the government does not contest that holding in this case.

The district court based its exclusion of Dr. Cutler's expert testimony on the second prong of the *Daubert* test. The court held that "the proposed testimony ... will not assist the trier of fact in this case to understand and determine a fact in issue."[1] That holding is in keeping with both *Thevis* and *Daubert.* We held in *Thevis:*

> [T]he problems of perception and memory can be adequately addressed in cross-examination and ... the jury can adequately weigh these problems through common-sense evaluation.

665 F.2d at 641. We reasoned in *Thevis* that expert testimony regarding eyewitness reliability was not needed, because the jury could determine the reliability of eyewitness identification with the tools of cross-examination. Expert testimony that does not assist the trier of fact can be excluded under *Daubert.* 509 U.S. at 587, 113 S.Ct. at 2793; see also *Hibiscus Assoc. Ltd. v. Board of Trustees of Policemen & Firemen Retirement Sys. of Detroit,* 50 F.3d 908, 917 (11th Cir.1995) (citing *Salem v. U.S. Lines Co.,* 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962)) ("Expert testimony is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves."). *Thevis* held that expert testimony regarding eyewitness reliability does not assist the jury, and we conclude that that holding

---

[1] Smith contends that the district court's exclusion of proposed testimony was erroneously based on the notion that it "will invade the province of the jury." Smith argues that the evidentiary rule excluding evidence because it embraces an ultimate issue to be decided by the trier of fact was abolished by Federal Rule of Evidence 704(a). However, a close reading of the district court's holding indicates that the court was concerned with whether the proposed testimony would help the jury, not with whether it treaded on the jury's decisional turf. The district court explicitly stated that one portion of Dr. Cutler's testimony would not be helpful and that another portion was within the "common experience and knowledge of the average lay person."

is in harmony with *Daubert.* Therefore, it is as true after *Daubert* as it was before that a district court does not abuse it discretion in excluding such testimony.

Smith relies upon an emerging body of case law that he claims looks more favorably on expert testimony regarding eyewitness reliability. As an initial matter, we note that in none of the decisions Smith relies upon has any court embraced the position that expert testimony regarding eyewitness reliability ought to be admitted wholesale in every case. Instead, some courts have held that such evidence would be admissible under "narrow" or "certain" circumstances. *United States v. Harris,* 995 F.2d 532, 535 (4th Cir.1993); *United States v. Stevens,* 935 F.2d 1380, 1400 (3d Cir.1991). Moreover, we have found only one case where a district court was reversed for excluding expert testimony regarding eyewitness reliability. *Stevens,* 935 F.2d at 1401. In that one case, the district court had admitted some of the expert's testimony, but the court of appeals reversed because it had not admitted all of the relevant expert testimony. *Id.* at 1400-01.

More fundamentally, we are not free to judge the *Thevis* rule in light of case law from other circuits. Under the prior panel precedent rule, we are bound by earlier panel holdings, such as that in *Thevis,* unless and until they are overruled en banc or by the Supreme Court. *See, e.g., Florida League of Professional Lobbyists, Inc. v. Meggs,* 87 F.3d 457, 462 (11th Cir.) (holding that even where it has been weakened, but not overruled, by a Supreme Court decision, prior panel precedent must be followed), *cert. denied,* --- U.S. ----, 117 S.Ct. 516, 136 L.Ed.2d 405 (1996); *United States v. Hogan,* 986 F.2d 1364, 1369 (11th Cir.1993) ("[I]t is the firmly established rule of this Circuit that each succeeding panel is bound by the holding of the first panel to address an issue of law, unless and until that holding is overruled en banc, or by the Supreme Court."). Whatever effect *Daubert* may, or may not, have had on our post-*Thevis* decisions in *Holloway* and *Benitez,* it did not vitiate *Thevis'* holding that a district court does not abuse its discretion when it excludes expert testimony on eyewitness identification. Of course, defendants who want to attack the reliability of eyewitness recollection are free to use the powerful tool of cross-examination to do so. They may also request jury instructions that highlight particular problems in eyewitness recollection. Smith did in the

present case and was successful in getting the district court to instruct the jury about cross-racial identification, potential bias in earlier identifications, delay between the event and the time of identification, and stress.

B. *Inextricably Intertwined Evidence*

Smith's second argument on appeal is that the district court erroneously admitted the evidence concerning the SouthTrust robbery committed by Terry Walker. The district court admitted that evidence because it was inextricably intertwined with the Merchant Bank robbery. Under Federal Rule of Evidence 404(b), evidence of other crimes is generally inadmissible as extrinsic evidence.

> Evidence of criminal activity other than the offense charged, however, is not extrinsic evidence if it is inextricably intertwined with the evidence of the charged offense. Furthermore, Rule 404(b) does not apply where the evidence concerns the context, motive, and set-up of the crime and is linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.

*United States v. Cancelliere,* 69 F.3d 1116, 1124 (11th Cir.1995) (citations and internal quotation marks omitted); *see also United States v. Paskett,* 950 F.2d 705, 708 n. 3 (11th Cir.1992) (holding evidence of money laundering admissible in bribery conviction where defendant attempted to bribe police officer during search for money laundering evidence); *United States v. Gomez,* 927 F.2d 1530, 1535 (11th Cir.1991) (holding evidence of third party's drug transaction two months after defendant's arrest for drug trafficking admissible where defendant had third party's mobile phone number in address book).

Here, the evidence of the SouthTrust robbery reveals strong links between it and the Merchant Bank robbery. Terry Walker used bait bills from the Merchant Bank robbery during the SouthTrust robbery. The descriptions of the guns used in the SouthTrust and Merchant Bank robberies indicate that the same weapon likely was used in both robberies. Those descriptions also match the description of the nine-millimeter Taurus automatic pistol purchased with the Victor Eugene Smith false identification. The baseball cap Terry Walker wore in the SouthTrust robbery was found in room number 52 of the Relax Inn, which Smith had rented. The two robberies

8

occurred on the same day and demonstrated similar modus operandi. Both robbers used a hat as a partial disguise, made an initial request for change, and then demanded at gunpoint the teller's money. The evidence establishes integral connections between the Merchant Bank robbery and the SouthTrust robbery. Accordingly, the district court did not abuse its discretion when it admitted evidence of the SouthTrust robbery.

Despite the foregoing, Smith contends that the SouthTrust robbery evidence, particularly the evidence of Terry Walker's conviction, was unduly prejudicial. Under Federal Rule of Evidence 403, relevant evidence may be excluded if its probative value "is substantially outweighed by the danger of unfair prejudice." As explained above, the SouthTrust robbery evidence has probative value because it revealed integral links between the Merchant Bank and the SouthTrust robberies. Although the SouthTrust robbery evidence may have had some prejudicial effect, the district court limited that effect through instructions to the jury at the time of admission and again during jury instructions. We cannot say that the evidence of the SouthTrust robbery was so prejudicial that the district court abused its discretion in admitting it. *See United States v. Fortenberry,* 971 F.2d 717, 721 (11th Cir.1992) (evidence of double murder probative and admissible in trial for gun possession), *cert. denied,* 506 U.S. 1068, 113 S.Ct. 1020, 122 L.Ed.2d 166 (1993).

III. CONCLUSION

For the foregoing reasons, we conclude that the district court did not abuse its discretion in excluding the expert testimony of Dr. Cutler, or in admitting the evidence of the SouthTrust robbery. Accordingly, Smith's conviction is AFFIRMED.