IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 13, 2003

## STATE OF TENNESSEE v. RODNEY LARON COVINGTON

**Appeal from the Criminal Court for Davidson County**
**No. 2001-C-1399     Steve Dozier, Judge**

---

**No. M2002-02714-CCA-R3-CD - Filed January 23, 2004**

---

The Appellant, Rodney Laron Covington, was convicted by a Davidson County jury of one count of rape of a child and two counts of aggravated sexual battery. Covington received a twenty-year sentence for rape of a child and ten-year sentences for each aggravated sexual battery conviction. The sentences were ordered to be served concurrently. On appeal, he presents three issues for our review: (1) whether testimony by a nurse practitioner violated the holding of *State v. Ballard*, 855 S.W.2d 557 (Tenn. 1993); (2) whether the State's recitation of the facts supporting the charge of rape of a child was "specific enough to ensure that the jury would reach a unanimous decision" and "sufficiently corresponded to the State's proof;" and (3) whether the proof established that the offense of rape of a child occurred after July 1, 1992, as required for 100% service of the sentence imposed under Tennessee Code Annotated section 39-13-523(b). After review of the record, we find no reversible error. Accordingly, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3; Judgments of the Criminal Court are Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JERRY L. SMITH, J., joined.

Ross E. Alderman, District Public Defender; Jeffrey A. DeVasher and Jay Steed, Assistant Public Defenders (on appeal) and J. Michael Engle, Assistant Public Defender (at trial), Nashville, Tennessee, for the Appellant, Rodney Laron Covington.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Elizabeth B. Marney, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Bernard McEvoy and Amy Eisenbeck, Assistant District Attorneys General, for the Appellee, State of Tennessee.

## OPINION

## Factual Background

At trial, the thirty-five-year-old Appellant testified that he was the choir director of a Nashville church and supplemented his income as a hair stylist. In the late 1980's, the Appellant met the parents of the minor victim, N.E.,[1] through their joint participation in a Christian vocal group. The victim's family and the Appellant became extremely close over the years, and the victim's mother described the Appellant as part of her "extended family." On two separate occasions when the victim's family experienced financial problems, they stayed at the Appellant's apartment, which he shared with his mother and sister. Often, the Appellant kept the victim and her brother for weekends or while her parents worked.

When the victim was in the seventh grade, she confided to friends that she had been raped as a younger child. This was ultimately reported and a school counselor contacted the victim's mother. Thereafter, an investigation began. The Appellant, after being interviewed by a Metro Police Detective, denied any sexual involvement with the victim. Nonetheless, the Appellant stated that, "in 1992 or 1993," when the victim was "around five years old," the victim on several occasions touched him in an inappropriate manner while at his apartment. Specifically, the Appellant related the following: (1) on one occasion, the victim "put her hand on my crouch area;" (2) on another occasion, she "was playing or rubbing my penis;" (3) during another incident, "[the victim] and I were in close contact, that I believe I may have been in an aroused state;" and (4) on another occasion, "I awoke and [the victim] was playing with the end of my penis . . . I became aroused and allowed her to continue. She sat atop of me and began to move back and forth. I let it go on for a while and then it stopped."

On July 27, 2001, the Appellant was indicted on four counts of rape of a child and four counts of aggravated sexual battery. The indictment was subsequently amended to reflect that these offenses, as charged in each of the eight counts, occurred on "a date between 8/1/93 - 8/1/95." Prior to trial, the trial court dismissed one count of child rape and two counts of aggravated sexual battery, upon motion of the State, leaving three counts of rape of a child and two counts of aggravated sexual battery.

Hollye Gallion, a pediatric nurse practitioner, who is employed at a facility that provides medical examinations for sexually abused children, testified that she examined the victim and obtained a medical history from her during the investigation. Ms. Gallion related that the victim told her that she was raped by the Appellant when she was in the first grade and afterward she felt a burning and stinging sensation following urination. During a physical examination of the victim, Ms. Gallion testified that she observed a hymenal "notch," which she described as a "dip or V shaped indentation in the contour of the hymen." Unable to determine the significance of this

---

[1] In order to protect the identity of minor victims of sexual abuse, it is the policy of this court to refer to the victims by their initials. *State v. Schimpf*, 782 S.W.2d 186, 188 n.1 (Tenn. Crim. App. 1989).

finding, she consulted with fellow professionals at her clinic. After further review, she concluded that the deep notch on the victim's hymen represented a healed partial tear, indicating past sexual abuse. While testifying that the notch was consistent with penetration, she also acknowledged that it could be a "variant of normal."

The victim, age fourteen at trial, provided testimony regarding the alleged incidents of sexual abuse, which occurred in 1993 and 1994. She was unable to give specific dates for any of the incidents but indicated that they probably occurred sometime during the period when she was between kindergarten and the second grade. The victim explained that, during each occasion which involved sexual penetration, the Appellant would first order her to remove her pants and underwear, and then pick her up and place her on his lap facing him. He would then insert his penis in her vagina and move her "back and forth." The victim identified different occurrences by stating that the first time this happened she found blood in her underwear later that evening as she was getting into the bathtub. Based upon this proof, as charged in count 1 of the indictment, the jury returned a verdict of guilty for the offense of child rape. In each of the two remaining charges of rape, the victim testified that both acts of penetration were interrupted by the appearance of visitors at the Appellant's apartment; once by a friend named Anastasia, and once by a friend named Lamont. With regard to these alleged rapes, which were charged in counts 2 and 3, the jury returned guilty verdicts to the lesser offense of aggravated sexual battery. The Appellant was found not guilty of both counts of aggravated sexual battery as contained in counts 4 and 5.

## Analysis

### I. Gallion's Testimony

The Appellant challenges admission of Nurse Practitioner Gallion's testimony relating to findings of specific physical symptoms of the victim. His argument is two-fold. He asserts that: (1) this testimony constituted non-admissible evidence indicative of "child sexual abuse syndrome" and (2) the trial court failed to verify the reliability of the evidence. Specifically, the Appellant challenges testimony by Gallion regarding the victim's claim of painful urination and the deep notch on her hymen discovered during the examination.

### A.     Child Sexual Abuse Syndrome

The Appellant asserts that the State used evidence of these two symptoms to vouch for the credibility of the victim in violation of the supreme court's holding in *State v. Ballard,* 855 S.W.2d 557 (Tenn. 1993). In *State v. Ballard*, the trial court allowed expert testimony concerning the symptoms of post-traumatic stress syndrome exhibited by the victims of child sexual abuse. *Id.* at 561. Our supreme court held that the evidence was inadmissible because "expert testimony describing the behavior of an allegedly sexually abused child is not reliable enough to 'substantially assist' a jury in an inquiry of whether the crime of child sexual abuse has taken place." *Id.* at 562.

Initially we note that the Appellant has waived his right to challenge the testimony regarding the hymenal notch. The Appellant's motion in limine made no attempt to exclude testimony regarding the notch found in the victim's hymen. During trial, the only objection made with regard to Gallion's opinion and findings related to the notched hymen was sustained. Gallion had testified that she was unable to immediately determine the significance of the notch, and she therefore prepared a slide review with other medical professionals who reviewed the data. She then testified:

Q      Now, after you all got together and had the slide review, did you all make a - - a determination?

A      We did.

[Defense Counsel]:    I'm gonna object to "you all" making a determination. If Ms. Gallion has an opinion- -

[The Court]:   . . . - - all right. I'll sustain the objection.

Q      . . . After - - after getting together with the slide review, did you make a determina - - a determination in this case?

A      I did.

Q      Okay. And - - and what was that determination?

A      The determination was that this is, indeed, a deep notch on the hymen, which is concerning for past abuse, for a partial tear to the hymen which is healed. It also could simply be a variant of normal, but it would be - - my estimation is that it's a concerning finding for past abuse.

Clearly from this testimony, the only objection by the Appellant to the testimony was sustained. Subsequent testimony was entered without objection. Therefore, the Appellant has waived this issue. Tenn. R. App. P. 3(e), 36(a). With regard to painful urination, the entire reference to this symptom is contained in one question.

Q      And, in - - also in her medical history, did she have a history of burning and stinging urination, when she was in first grade?
A      She did report that.

Regardless of any waiver, we find the Appellant's reliance on *State v. Ballard* is misplaced. The pediatric nurse practitioner's testimony in this case centered, not upon the dynamics of child abuse or psychological trauma but, rather, upon specific physical and medical findings. Accordingly, we find this issue without merit.

**B.      Reliability**

The Appellant next asserts the trial court erred by "abdicating its gatekeeping role in regards to the expert testimony, in violation of <u>Daubert</u> and <u>Kumho Tire Co, *Ltd*</u>.," *i.e.*, by not ensuring the reliability or validly of the scientific testimony provided by Gallion regarding the victim's "constellation of symptoms."  He further asserts that the court did not ensure that the expert's opinions were based on reliable facts and data and did nothing to ensure that the witness' opinions were adequately supported by observations, research, or testing.  Essentially, the Appellant is arguing that the trial court failed to take any action to ensure the reliability of expert testimony and admitted unreliable testimony to the extreme prejudice of the Appellant.

Again, regardless of any waiver, we find the Appellant's assertions to be without merit.  In *State v. Coley*, 32 S.W.3d 831, 834 (Tenn. 2000), our supreme court observed that the following principles guide a trial court's determination of whether to admit expert testimony relating to scientific, technical, or other specialized knowledge:

> First, the evidence must be relevant to a fact at issue in the case.  Tenn. R. Evid. 401, 402.   Second, the expert must be qualified by specialized knowledge, skill, experience, training, or education in the field of expertise, and the testimony in question must substantially assist the trier of fact to understand the evidence or determine a fact in issue.  Tenn. R. Evid. 702; *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 265 (Tenn. 1997); *State v. Begley*, 956 S.W.2d 471, 475 (Tenn. 1997).  Finally, when the expert witness offers an opinion or states an inference, the underlying facts or data upon which the expert relied must be trustworthy.  Tenn. R. Evid. 703; *McDaniel*, 955 S.W.2d at 265.

The trial court is the gatekeeper of determining if experts and their testimony are acceptable. Questions concerning the qualifications, admissibility, relevancy, and competency of expert testimony are matters left within the discretion of the trial court.  *Ballard*, 855 S.W.2d at 562.  On appeal, the standard of review is whether the trial court abused its discretion by admitting or excluding expert testimony.  *Id*.  "An appellate court should find an abuse of discretion when it appears that a trial court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining."  *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997).

The challenged testimony in this case was clearly relevant to the issue before the jury. Gallion, as the Appellant concedes, was a pediatric nurse practitioner and qualified as an expert in the field of child sexual abuse.  She presented testimony to the court regarding medical symptoms of the victim.  Such testimony was clearly within the area of her specialized skill or knowledge.  We find nothing to suggest that the facts underlying her assertions were anything other than trustworthy. It was for the jury to determine the weight and value to be given to the expert's opinion testimony. Finding no abuse of discretion, this issue is without merit.

## II. Election of Offenses

The Appellant next contends that the State's election of offenses with regard to count 1, rape of a child, was improper because it: (1) failed to described the elected offense with sufficient specificity to ensure that the jury would reach a unanimous decision and (2) failed to sufficiently correspond to the proof presented at trial. To avoid a finding that the challenge is waived for failure to raise the issue at the trial level, he urges us to consider this under the doctrine of plain error, as he acknowledges that no previous challenge was raised.

When the State introduces evidence at trial of multiple sex acts between the defendant and the victim in a single "open-dated" indictment count, at the conclusion of its case-in-chief, the State must elect the particular incident for which a conviction is being sought. *State v. Rickman*, 876 S.W.2d 824, 829 (Tenn. 1994); *see also State v. Clyde Hambrick, Jr.*, No. E1998-00893-CCA-R3-CD (Tenn. Crim. App. at Knoxville, June 27, 2000). This requirement of election serves several purposes: (1) it enables the defendant to prepare for the specific charge; (2) it protects a defendant against double jeopardy; (3) it ensures the jurors' deliberation over and their return of a verdict based upon the same offense; (4) it enables the trial judge to review the weight of the evidence in its role as the thirteenth juror; and (5) it enables an appellate court to review the legal sufficiency of the evidence. *State v. Brown*, 992 S.W.2d 389, 391 (Tenn. 1999). The supreme court has noted that a defendant's right under our state constitution to a unanimous jury verdict is of paramount concern. *State v. Shelton*, 851 S.W.2d 134, 137 (Tenn. 1993). Moreover, because the election requirement is "fundamental, immediately touching the constitutional rights of an accused," a trial court has a duty, even absent a request by a defendant, to ensure the timely election of offenses by the State and to properly instruct the jury concerning the requirement of a unanimous verdict. *Burlison v. State*, 501 S.W.2d 801, 804 (Tenn. 1973). Recognizing the practical difficulties present in applying the election requirement in cases of child sexual abuse, our supreme court has further provided the following broad guidelines:

> By insisting upon election, we emphasize that the state is not required to identify the particular date of the chosen offense. . . . If, for example, the evidence indicates various types of abuse, the prosecution may identify a particular type of abuse and elect that offense. Moreover, when recalling an assault, a child may be able to describe unique surroundings or circumstances that help to identify an incident. The child may be able to identify an assault with reference to a meaningful event in his or her life, such as the beginning of school, a birthday, or a relative's visit. Any description that will identify the prosecuted offense for the jury is sufficient. In fulfilling its obligation under *Burlison* to ensure that an election occurs, the trial court should bear in mind that the purpose of election is to ensure that each juror is considering the same occurrence. If the prosecution cannot identify an event for which to ask a conviction, then the court cannot be assured of a unanimous decision.

*Shelton*, 851 S.W.2d at 137-38 (citations and footnote omitted).

The Appellant is challenging only the State's election in regard to count 1. The State made the following election after the close of its proof:

This is the first time the Defendant penetrated [victim's] vagina with his penis. This occurred in the living room of the Defendant's apartment.

Defendant told [victim] to sit on his lap, and he penetrated her. After, [victim] noticed blood in her underwear.

The trial judge used the same language in its charge to the jury with the instruction that,

[b]efore the Jury may return a verdict of guilt on a charged offense, the Jury must unanimously find that, with respect to a given count, the State has proven beyond a reasonable doubt that the particular incident specified in the election occurred. In other words, to convict the Defendant on a particular count as to each count of the Indictment, every juror must base that finding on the same, single identifiable incident.

The Appellant specifically argues that the victim's testimony regarding penetration created the potential that each juror was not considering the "same occurrence" in arriving at their verdict. He argues that, because the victim gave general testimony as to what occurred with each penetration rather than specifically describing each event in turn, it was impossible to ensure jury unanimity. Additionally, he asserts the fact that the victim testified that she did "not really" remember the first time she was raped compounds the issue. He further argues that the proof presented by the State does not sufficiently correspond to the proof presented.

The State's election refers to the "first time" the Appellant penetrated the victim after which the victim noticed blood on her underwear. The Appellant relies specifically upon the following testimony to support his argument:

Q    [Victim], did he do that one time or more than one time?

A    More than once.

Q    I want you to think about the first time you did that. Do you remember the first time?

A    Not really. . . .

Q    Okay. Do you remember, the first time, did you look at your body or look at your clothes afterwards?

A    Yes, once I - - I went home and I was getting a bath.

Q       You'll have to speak up - -

A       One time I went home and I was about to get in the tub, and there was blood in my pants. . . .

Q       [Victim], I asked you, after that first time, did you look at your body or look at your clothes afterwards?

A       Yes, sir.

Q       Which was it?  Did you look at your body or look at your clothes?

A       My clothes.

Q       Can you tell me, when you did that, where you did that, and what you saw?

A       When I got home and I was in my room, I was about to get in the bathtub, I was taking off my clothes; and there was blood in my panties.

It is clear from the record that the State adequately elected the offense to ensure that the jury was considering the same occurrence of penetration, and the proof the State presented sufficiently corresponded.  The victim was clear in her testimony regarding what happened with regard to each penetration.  The three counts which the State elected were clearly distinguished from each other to ensure jury unanimity.  This count was clearly distinguished from the remaining two counts, which were identified by interruptions by the visitors Anastasia and Lamont.  Additionally, the trial court specifically instructed the jury to return a unanimous verdict based on consideration of the "same, single identifiable incident."  We must presume the jury followed that instruction.  *See State v. Smith*, 893 S.W.2d 908, 914 (Tenn. 1994), *cert. denied*, 516 U.S. 829, 116 S. Ct. 99 (1995); *State v. Williams*, 929 S.W.2d 385, 388 (Tenn .Crim. App. 1996).  We find this issue to be without merit.

## III.  100% Release Eligibility Requirement

As his third issue, the Appellant contends that it was error for the trial court to set his release eligibility date at 100% service for his rape of a child conviction.  He asserts that the State failed to sufficiently establish that the offense occurred after July 1, 1992; therefore, he alleges that the release eligibility date under the prior statute governs.

Prior to July 1, 1992, the unlawful sexual penetration of a victim less than thirteen (13) years of age was designated as aggravated rape.  Tenn. Code Ann. § 39-13-502(a)(4) (1991).  This statute did not contain a mandatory service requirement of the entire sentence.  *Id.*  However, on July 1, 1992, Tennessee Code Annotated § 39-13-523(b) became effective and provided that "[n]otwithstanding any other provision of law to the contrary, a . . . child rapist, . . . shall be required to serve the entire sentence imposed by the court undiminished by any sentence reduction credits

such person may be eligible for or earn." Tenn. Code Ann. § 39-13-523(b) (2003). Thus, any such crime committed after the enactment date is subject to this provision.

The Appellant is correct that, if the State failed to establish that the offense in question occurred on or after July 1, 1992, a release eligibility date of 100% is not mandated. *State v. Bobby Dale Franklin, Sr.*, No. 03C01-9804-CR-00129 (Tenn. Crim. App. at Knoxville, Apr. 12, 1999). However, after review of the record, we find that the State clearly established that the offense occurred after the effective date of the statute. The indictment charged that the offense occurred between August 1, 1993, and August 1, 1995. During her testimony, the victim was apparently confused as to whether the event occurred when she was in kindergarten or first grade. Nevertheless, the proof established that the victim began kindergarten in 1993, which was after the effective date the statute became law. Additionally, we note that, in the Appellant's statement to the police, he refers to dates in 1992 or 1993 but states that the victim was five or six years old. The record establishes that the victim was born January 29, 1988. Assuming her to be five when the rape occurred, the date would have been at least January of 1993. Thus, we find that the State has carried its burden and established that the rape of the victim occurred subsequent to July 1, 1992. Accordingly, the conviction was subject to the provision requiring mandatory service of the entire sentence with a release eligibility date of 100%. This issue is without merit.

## CONCLUSION

Based upon the foregoing, the judgments of the Davidson County Criminal Court are affirmed.

_____
DAVID G. HAYES, JUDGE