IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 8, 2000 Session

## STATE OF TENNESSEE v. EDDIE L. COLEY, JR.

**Appeal by permission from the Court of Criminal Appeals**
**Circuit Court for Williamson County**
**No. II-895-228     Donald P. Harris, Judge**

---

**No. M1997-00116-SC-R11-CD - Filed October 13, 2000**

---

This appeal arises from the trial court's exclusion of expert testimony concerning eyewitness identification sought to be offered by the defendant in his trial for aggravated robbery. At trial, Eddie L. Coley, Jr., the defendant, sought to introduce expert testimony concerning eyewitness identification; at the State's objection, the trial court refused to admit the testimony. Coley appealed to the Court of Criminal Appeals. The intermediate court affirmed his conviction and sentence. Appealing to this Court, Coley contends that the trial court abused its discretion in refusing to admit the expert testimony. We accepted review in this case to determine the admissibility of expert testimony concerning eyewitness identification. We hold that the testimony proffered here is inadmissible under Tenn. R. Evid. 702 and that the trial court, therefore, properly excluded the testimony of Coley's expert witness.

**Tenn. R. App. P. 11 Appeal; Judgment of the Court of Criminal Appeals Affirmed on Separate Grounds**

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, and WILLIAM M. BARKER, JJ., joined. JANICE M. HOLDER, J., filed a dissenting opinion, in which E. RILEY ANDERSON, C.J., joined.

John P. Cauley and Larry D. Drolsum, Franklin, Tennessee, for the appellant, Eddie L. Coley, Jr.

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General, and Kathy Morante, Deputy Attorney General, Ronald L. Davis, District Attorney General, Derek Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

I. Facts and Procedural History

Coley does not challenge the sufficiency of the evidence upon which he was convicted; thus, only those facts necessary to this appeal are provided. On July 15, 1995, Sarah Blumberg and Jennifer McMillen were working at an ice cream shop in Brentwood. At approximately 1 p.m., a male entered the store. After placing an order, the male brandished a gun and instructed one of the employees to put the store's money into a bag. The male then forced both employees into the store's walk-in freezer where they remained until they heard a customer enter the store. After exiting the freezer, they called the police.

The police uncovered no physical evidence at the crime scene. Both employees, however, separately described the robber as an obese "Black" man around 5' 9" tall and about twenty years old. The employees then helped the police prepare separate composite pictures of the robber. Nine days after the robbery, Blumberg observed a photographic line-up which included Coley's picture. She identified him as the robber. Five months after the robbery, McMillen saw the same photographic line-up. She too identified Coley.

At trial, the critical issue was identification. The State's case relied heavily on Blumberg's and McMillen's pre-trial and in-court identifications of Coley. Coley, on the other hand, offered an alibi defense, maintaining that another person had committed the robbery. Coley desired to adduce the testimony of Michael G. Johnson, Ph.D., J.D., an expert in the field of eyewitness identification. The State objected to Johnson's testimony on the ground that it would not assist the jury in deciding the identification issue. The trial court agreed and refused to admit Johnson's testimony.

The trial court, nevertheless, allowed Johnson to make a proffer of his testimony for the record. The proffered testimony included information covering the following topics:

1.     the process of eyewitness identification;

2.     the relationship between stress and memory of an event;

3.     cross-racial identification;

4.     the confidence the witnesses have in the accuracy of their identifications and the actual accuracy of their identifications;

5.     the effect of time on the accuracy of memory; and

6.     the suggestibility of the photographic line-up used in this case.

The jury found Coley guilty of aggravated robbery,[1] and sentenced him to twelve years in the Department of Correction. Coley appealed, contending that the trial court erred in excluding the expert's testimony and that the sentence was excessive. The intermediate appellate court affirmed Coley's conviction and sentence.[2] On appeal to this Court, Coley contends that the trial court abused its discretion in excluding Johnson's testimony and that he was prejudiced by its exclusion.[3] The State, on the other hand, contends that Johnson's testimony was properly excluded. We accepted review in this case to determine the admissibility of the proffered expert testimony concerning eyewitness identification.

## II. Standard of Review

Determinations of the admissibility of expert testimony are made within the sound discretion of the trial court. State v. Ballard, 855 S.W.2d 557, 562 (Tenn. 1993). The standard of review on appeal is whether the trial court abused its discretion in excluding the expert testimony. The abuse of discretion standard contemplates that before reversal the record must show that a judge "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999); State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997).

## III. Analysis

As a general rule, the admissibility of expert testimony in Tennessee is governed by Tenn. R. Evid. 701-706. This case is governed specifically by Tenn. R. Evid. 702 which provides that expert testimony is admissible if it will "substantially assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." (Emphasis added.). Expert testimony regarding eyewitness identification arguably fails to satisfy the plain meaning of this language. Eyewitness testimony has no scientific or technical underpinnings which would be outside the common understanding of the jury; therefore, expert testimony is not necessary to help jurors "understand"

---

[1](a) Aggravated robbery is robbery as defined in § 39-13-401:
(1) Accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon; or
(2) Where the victim suffers serious bodily injury.
(b) Aggravated robbery is a Class B felony.

Tenn. Code Ann. § 39-13-402 (1997).

[2]Three separate opinions were filed by the Court of Criminal Appeals panel. One held that the admissibility of expert evidence on the credibility of eyewitness testimony should be determined on a case-by-case basis, but affirmed the exclusion of the evidence in this case. A concurring opinion found that Tennessee has previously followed a per se exclusionary rule. The third, a dissenting opinion, concluded that the case should be remanded for a hearing to determine whether the expert testimony should be admitted.

[3]We observe initially that Coley's argument, that had the testimony in question been admitted the jury would have acquitted him, is fatally flawed. The admission of the questioned testimony would not, necessarily, lead to acquittal. The jury, considering the testimony in dispute, may have convicted Coley anyway.

the eyewitness's testimony. Moreover, expert testimony about the eyewitness's accuracy does not aid the jury in determining a fact in issue because the question whether an eyewitness should be believed is not a "fact in issue" but rather a credibility determination.

Tennessee Rule of Evidence 702 is more stringent than its federal counterpart. As a matter of contrast, while Fed. R. Evid. 702 requires only that the evidence "assist the trier of fact," Tenn. R. Evid. 702 requires that expert testimony "substantially assist the trier of fact. . . ." Compare Fed. R. Evid. 702 (emphasis added) with Tenn. R. Evid. 702. "This distinction indicates that the probative force of the testimony must be stronger before it is admitted in Tennessee." McDaniel v. CSX Transp., Inc., 955 S.W.2d 257, 264 (Tenn. 1997). In McDaniel, we discussed the principles guiding a trial court's determination whether to admit scientific or technical evidence. First, the evidence must be relevant to a fact at issue in the case. Tenn. R. Evid. 401, 402. Second, the expert must be qualified by specialized knowledge, skill, experience, training, or education in the field of expertise, and the testimony in question must substantially assist the trier of fact to understand the evidence or determine a fact in issue. Tenn. R. Evid. 702; McDaniel, 955 S.W.2d at 265; State v. Begley, 956 S.W.2d 471, 475 (Tenn. 1997). Finally, when the expert witness offers an opinion or states an inference, the underlying facts or data upon which the expert relied must be trustworthy. Tenn. R. Evid. 703; McDaniel, 955 S.W.2d at 265. The reliability of scientific evidence is determined by considering the following nonexclusive list of factors:

> (1) whether the scientific evidence has been tested and the methodology with which it has been tested; (2) whether the evidence has been subjected to peer review or publication; (3) whether a potential rate of error is known; (4) whether . . . the evidence is generally accepted in the scientific community; and (5) whether the expert's research in the field has been conducted independent of litigation.

McDaniel, 955 S.W.2d at 265. Here, the question is whether the evidence is inadmissible because expert testimony describing the general reliability of eyewitness testimony "is not reliable enough to 'substantially assist' a jury in an inquiry of whether" the two employees' testimony should be believed. See e.g., State v. Ballard, 855 S.W.2d 557, 562 (Tenn. 1993).

Though the admissibility of each expert's testimony generally rests within the sound discretion of the trial judge, Tennessee courts have, on occasion, excluded specific categories of expert testimony. See State v. Ballard, 855 S.W.2d 557, 561-63 (Tenn. 1993); see also State v. Schimpf, 782 S.W.2d 186, 189-95 (Tenn. Crim. App. 1989). Applying Tenn. R. Evid. 702 to the instant case, we first note that this case is analogous to State v. Ballard. In Ballard, we held that expert testimony concerning symptoms of post-traumatic stress syndrome exhibited by victims of child abuse was inadmissible. 855 S.W.2d at 563. In reaching this conclusion we reasoned that:

> [i]n the context of the criminal trial, expert scientific testimony solicits the danger of undue prejudice or confusing the issues or misleading the jury because of its aura of special reliability and

-4-

trustworthiness. This 'special aura' of expert scientific testimony, especially testimony concerning personality profiles of sexually abused children, may lead a jury to abandon its responsibility as a fact finder and adopt the judgment of the expert. Such evidence carries strong potential to prejudice a defendant's cause by encouraging a jury to conclude that because the children have been identified by an expert to exhibit behavior consistent with post-traumatic stress syndrome, brought on by sexual abuse, then it is more likely that the defendant committed the crime. Testimony that children exhibit symptoms or characteristics of post-traumatic stress syndrome should not suffice to confirm the fact of sexual abuse. The symptoms of the syndrome are 'not like a fingerprint in that it can clearly identify the perpetrator of a crime.' Expert testimony of this type invades the province of the jury to decide on the credibility of witnesses.

855 S.W.2d at 561-62 (internal citations omitted).

Here, as in Ballard, we are presented with testimony of a general nature designed to affect the juror's decision on the credibility of witnesses. Using the Ballard rationale, expert testimony concerning eyewitness identification "solicits the danger of undue prejudice or confusing the issues or misleading the jury . . . ." Id. at 561. As a result, it may "lead a jury to abandon its responsibility as fact finder and adopt the judgment of the expert," rather than "assist" the jury in making its own determination of credibility. See Id.

We also note that the closest we have come, thus far, to the issue posed in the case under submission was in State v. Dyle, 899 S.W.2d 607 (Tenn. 1995). In Dyle, we were asked to approve certain jury instructions, known as the United States v. Telfaire[4] instruction, given in cases where identification of the perpetrator is a material issue. Id. "[A]cknowledging that accuracy of eyewitness testimony is affectable by the usual universal fallibilities of human sense perception and memory," we rejected both our own pattern jury instruction on identity approved for use in Tennessee as well as the specific instruction created by the District of Columbia Circuit Court of Appeals in Telfaire,[5] choosing instead to promulgate our own new instruction for cases involving

---

[4]469 F.2d 552 (D.C. Cir. 1972).

[5]The instructions promulgated in Dyle as are follows:

One of the issues in this case is the identification of the defendant as the person who committed the crime. The state has the burden of proving identity beyond a reasonable doubt. Identification testimony is an expression of belief or impression by the witness, and its value may depend upon your consideration of several factors. Some of the factors which you may consider are:

(1) The witness' capacity and opportunity to observe the offender. This includes, among other things, the length of time available for observation, the distance from

eyewitness identifications. Id. at 612. In rejecting the Telfaire instruction, we noted its inappropriateness "because it impermissibly comments on the evidence; thus invading the province of the jury." Id. Thus, we emphasized that the assessment of witness credibility and the role of fact-finder is always left to the jury, regardless of the issue present in the case. Moreover, the reassessment and revamping in Dyle of our pattern jury instructions on identification suggests, by analogy, that expert testimony on the issue of identity should be excluded.

Though we have not specifically addressed the issue of the admissibility of expert evidence concerning the reliability of eyewitness testimony, the Court of Criminal Appeals has articulated several reasons for excluding such evidence. In State v. Ward, 712 S.W.2d 485, 487 (Tenn. Crim. App. 1986), the court stated,

> We are of the opinion that there are too many variables involved including individual power of observation, individual reaction to stress or the threat of violence, the visual acuity of a particular witness, as well as numbers of general, common factors unamenable to charting and categorizing.

And in State v. Wooden, 658 S.W.2d 553, 556 (Tenn. Crim. App. 1983), the court found the following:

> To admit such testimony in effect would permit the proponent's witness to comment on the weight and credibility of opponents'

---

which the witness observed, the lighting, and whether the person who committed the crime was a prior acquaintance of the witness;

(2) The degree of certainty expressed by the witness regarding the identification and the circumstances under which it was made, including whether it is the product of the witness' own recollection;

(3) The occasions, if any, on which the witness failed to make an identification of the defendant, or made an identification that was inconsistent with the identification at trial; and

(4) The occasions, if any, on which the witness made an identification that was consistent with the identification at trial, and the circumstances surrounding such identifications.

Again, the state has the burden of proving every element of the crime charged, and this burden specifically includes the identity of the defendant as the person who committed the crime for which he or she is on trial. If after considering the identification testimony in light of all the proof you have a reasonable doubt that the defendant is the person who committed the crime, you must find the defendant not guilty.

Id. at 612.

witnesses and open the door to a barrage of marginally relevant psychological evidence. Moreover, we conclude, as did the trial judge, that the problems of perception and memory can be adequately addressed in cross-examination and that the jury can adequately weigh these problems through common-sense evaluation.

In other jurisdictions as well, an overwhelming majority of courts have upheld the trial court's finding that the testimony is inadmissible.[6] These courts have provided many reasons for excluding this type of expert testimony. For example, some courts have upheld the exclusion because such testimony is unhelpful and simply offers generalities. See Brien, 59 F.3d at 277. As the Nebraska Supreme Court has noted:

> the knowledge of behavioral scientists, such as psychologists, is probabilistic, couched in terms of averages, standard deviations, curves, and differences between groups. A court, however, is not concerned with the average eyewitness' reliability but with the reliability of the specific eyewitness before it, who may vary from the average in probabilistic but ultimately unknown ways. It is not the research behavioral social scientist who is in a position to assess a specific witness' reliability; the jury, which views the witness as an individual, is best able to collectively determine, on the basis of common human experience as yet unsurpassed by laboratory research, how to weigh what an individual witness has to say.

State v. Trevino, 432 N.W.2d 503, 520 (1988).

Other courts have excluded this type of testimony because "'[s]uch expert testimony will not aid the jury because it addresses an issue of which the jury is already generally aware, and it will not contribute to their understanding of the particular dispute.'" Hall, 165 F.3d at 1104 (quoting United States v. Hudson, 884 F.2d 1016, 1024 (7th Cir. 1989)). Thus, the "'reliability of eyewitness

---

[6]See, e.g., United States v. Hall, 165 F.3d 1095, 1103-08 (7th Cir. 1999); United States v. Smith, 156 F.3d 1046, 1052-54 (10th Cir. 1998); United States v. Smith, 122 F.3d 1355, 1357-60 (11th Cir. 1997); United States v. Kime, 99 F.3d 870, 883-85 (8th Cir. 1996); United States v. Ginn, 87 F.3d 367, 370 (9th Cir. 1996); United States v. Brien, 59 F.3d 274, 275-78 (1st Cir. 1995); United States v. Harris, 995 F.2d 532, 534-36 (4th Cir. 1993); Johnson v. State, 526 S.E.2d 549 (Ga. 2000); State v. McClendon, 730 A.2d 1107, 1114-16 (1999); McMullen v. State, 714 So.2d 368, 369-73 (Fla. 1998); State v. Miles, 585 N.W.2d 368, 370-72 (Minn. 1998); Commonwealth v. Santoli, 680 N.E.2d 1116, 1118-21 (1997); State v. Sabetta, 680 A.2d 927, 932-33 (R.I. 1996); State v. Roscoe, 910 P.2d 635, 646 (1996); White v. State, 926 P.2d 291, 292 (1996); State v. Abraham, 451 S.E.2d 131, 148-49 (1994); Jones v. State, 862 S.W.2d 242, 244-45 (1993); State v. Wilson, 508 N.W.2d 44, 50-51 (Wis. Ct. App. 1993).

identification is within the knowledge of jurors and expert testimony generally would not assist them . . . .'" McClendon, 730 A.2d at 1114 (citation omitted).[7]

In excluding expert testimony concerning eyewitness identification, courts have also noted that the "minimal probative value of the proffered expert testimony is outweighed by the danger of juror confusion." Kime, 99 F.3d at 884. Such testimony has the potential to confuse and mislead the jury and create prolonged trials by battles of experts. See Brien, 59 F.3d at 277; Campbell v. People, 814 P.2d 1, 5 (Colo. 1991).

Finally, courts have reasoned that this testimony invades the province of the jury by evaluating witness credibility. Campbell, 814 P.2d at 5 (citation omitted).[8] Rather than permit experts to testify in such cases, usurping a function traditionally left to juries, courts have found that "juries may be made to understand psychological factors which affect the accuracy of an identification when these factors are brought to light at cross-examination and during closing argument." State v. Percy, 595 A.2d 248, 252 (1990). Thus, "jurors using common sense and their faculties of observation can judge the credibility of an eyewitness identification, especially since deficiencies or inconsistencies in an eyewitness's testimony can be brought out with skillful examination." Smith, 156 F.3d at 1053 (quoting Harris, 995 F.2d at 535).[9] Courts have also reasoned that along with cross-examination, jury instructions specifically tailored to cases involving eyewitness identification sufficiently aid the jury in determining the credibility of the witnesses. As the Kansas Supreme Court has reasoned:

> we have concluded that requiring trial courts to admit this type of expert evidence is not the answer to the [eyewitness identification] problem. We believe that the problem can be alleviated by a proper cautionary instruction to the jury which sets forth the factors to be considered in evaluating eyewitness testimony. Such instruction, coupled with vigorous cross-examination and persuasive argument by defense counsel dealing realistically with the shortcomings and trouble spots of the identification process, should protect the rights of the defendant and at the same time enable the courts to avoid problems involved in the admission of expert testimony on this subject.

---

[7] See Smith, 122 F.3d at 1358 (quoting United States v. Thevis, 665 F.2d 616, 641 (5th Cir. 1982)); Sabetta, 680 A.2d at 933 (quoting State v. Porraro, 404 A.2d 465, 471 (1979)); Roscoe, 910 P.2d at 647; Commonwealth v. Simmons, 662 A.2d 621, 631 (1995); Abraham, 338 N.C. at 348, 451 S.E.2s at 149.

[8] See Kime, 99 F.3d at 884 (quoting Bachman v. Leapley, 953 F.2d 440, 441 (8th Cir. 1992)); State v. Poland, 698 P.2d 183, 193 (1985); Currie v. Commonwealth, 515 S.E.2d 335, 338 (1999).

[9] See Ginn, 87 F.3d at 370; Miles, 585 N.W.2d at 372 (quoting State v. Helterbridle, 301 N.W.2d 545, 547 (Minn. 1980)); Roscoe, 910 P.2d at 647; Simmons, 662 A.2d at 631; Abraham, 451 S.E.2d at 149.

<u>State v. Gaines</u>, 926 P.2d 641, 647 (1996) (quoting <u>State v. Warren</u>, 635 P.2d 1236 (1981)).[10]

Governed by the fundamental principles of <u>McDaniel</u>, and the rationale of <u>Ballard</u> and <u>Dyle</u>, we find that expert testimony concerning eyewitness identification simply offers generalities and is not specific to the witness whose testimony is in question. Moreover, we are of the opinion that the subject of the reliability of eyewitness identification is within the common understanding of reasonable persons. Therefore, such expert testimony is unnecessary. It may mislead and confuse, and it could encourage the jury to abandon its responsibility as fact-finder. Such responsibility is a task reserved for and ably performed by the jury, aided by skillful cross-examination and the jury instruction promulgated in <u>Dyle</u> when appropriate. For these reasons, we find that general and unparticularized expert testimony concerning the reliability of eyewitness testimony, which is not specific to the witness whose testimony is in question, does not substantially assist the trier of fact. Thus, we hold that such testimony is inadmissible under Tenn. R. Evid. 702 and that the trial court, therefore, properly excluded Johnson's testimony.[11]

We recognize that we are in the minority of jurisdictions which find such testimony per se inadmissible, rather than leaving the determination of admissibility to the discretion of the trial court.[12] Nonetheless, we are convinced that a per se rule of exclusion is appropriate. First, leaving the admissibility of this type of expert testimony to the discretion of the trial court would require us, at least implicitly, to reject the sound reasoning of <u>Ballard</u>. Second, the rules of evidence from those jurisdictions which leave the admissibility of expert testimony concerning eyewitness identification to the discretion of the trial court require, as does Fed. R. Evid. 702, only that expert testimony "assist the trier of fact."[13] Under Tenn. R. Evid. 702, however, expert testimony is admissible only if it "<u>substantially</u> assists the trier of fact." (Emphasis added.). Thus, Tenn. R. Evid. 702 requires a greater showing of probative force than the federal rules of evidence or the rules of evidence from those states that have followed the federal rules, making the per se exclusion appropriate. See <u>McDaniel</u>, 955 S.W.2d at 264.

---

[10]See <u>Smith</u>, 122 F.3d at 1359; <u>Miles</u>, 585 N.W.2d at 372 (quoting <u>Halterbridle</u>, 301 N.W.2d at 547); <u>Santoli</u>, 680 N.E.2d at 1120-21; <u>Campbell</u>, 814 P.2d at 5; <u>State v. Kinsey</u>, 797 P.2d 424, 427-29 (Utah Ct. App. 1990).

[11]Our conclusion is further supported by the fact that the trial court provided the jury with instructions substantially similar to those promulgated in <u>Dyle</u>.

[12]See, e.g., <u>Smith</u>, 122 F.3d at 1358; <u>Gaines</u>, 926 P.2d at 649; <u>Simmons</u>, 662 A.2d at 630-31; <u>Gibbs v. Commonwealth</u>, 723 S.W.2d 871, 874 (Ky. Ct. App. 1986). By excluding the evidence in question as a class, it may appear that we are finding such evidence presumptively inadmissible. We are under the guidance of <u>Ballard</u>, <u>Dyle</u>, and <u>Schimpf</u>. We do not intend to remove from the trial judge the discretion to decide about marginally-admissible evidence. In cases such as the one at bar, however, the evidence is clearly inadmissible.

[13]See, e.g., Fed. R. Evid. 702; Ariz. R. Evid. 702; Ark. R. Evid. 702; Conn. R. Evid. 702; Fla. R. Evid. § 90.702; Minn. R. Evid. 702; Nev. Rev. Stat. § 50.275 (1999); N.C. R. Evid. 702; R.I. R. Evid. 702; Vt. R. Evid. 702.

## IV. Conclusion

For the reasons articulated above, general and unparticularized expert testimony concerning eyewitness testimony, which is not specific to the witness whose testimony is in question, is inadmissible under Tenn. R. Evid. 702, and the trial court properly excluded the testimony of Coley's expert.[14]  The judgment of the Court of Criminal Appeals is, therefore, affirmed on the separate grounds stated herein.

Costs of this appeal are assessed to the defendant, Eddie L. Coley, Jr.

_____
ADOLPHO A. BIRCH, JR., JUSTICE

---

[14]In so holding, we also reject Coley's additional argument that the trial court's exclusion of his expert's testimony violated his constitutional right to present a defense.  When considering whether the constitutional right to present a defense has been violated by the exclusion of evidence, the analysis should consider whether: (1) the excluded evidence is critical to the defense; (2) the evidence bears sufficient indicia of reliability; and (3) the interest supporting exclusion of the evidence is substantially important.  See Chambers v. Mississippi, 410 U.S. 284, 298-301, 93 S. Ct. 1038, 1047-49, 35 L. Ed. 2d 297, 310-12 (1973).  For the reasons stated above, the evidence excluded in this case is not critical to Coley's defense.  Thus, Coley's claim that his constitutional rights were violated is without merit.