Howard Walter **THOMAS**

v.

**STATE of Tennessee.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Nov. 18, 2008 Session.

Feb. 12, 2009.

Application for Permission to Appeal Denied by Supreme Court Aug. 17, 2009.

W. Thomas Dillard and Steven Ross Johnson, Knoxville, Tennessee, for the appellant, Howard Walter Thomas.[1]

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Leland Price, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

The petitioner, Howard Walter Thomas, appeals the denial of his petition for post-conviction relief. In this appeal, he alleges that the trial court's reliance on the ruling in *State v. Coley*, 32 S.W.3d 831 (Tenn. 2000), to prohibit the introduction of expert testimony regarding eyewitness identification at his trial deprived him of the due process of law, infringed upon his constitutional rights to present a defense and to compulsory process, and rendered his trial fundamentally unfair. Discerning no error in the judgment of the post-conviction court, we affirm.

On May 4, 2003, a Knox County Criminal Court jury convicted the petitioner, Howard Walter Thomas, of the first degree premeditated murder of John Cook, especially aggravated kidnapping, especially aggravated robbery, and the attempted first degree murder of Yvonne Cook. After a statement by Mrs. Cook asking that the jury impose a sentence of life imprisonment rather than the death penalty, the State withdrew its notice seeking the death penalty, and the trial court imposed a life sentence. Following a sentencing hearing, the trial court imposed sentences of 22 years for especially aggravated kid-

---

1. Although an order appointing Knoxville attorney Karmen Waters to represent the petitioner in the post-conviction proceeding appears in the record, Ms. Waters made no appearance and filed no pleading on behalf of the petitioner. The record indicates that Mr. Dillard and Mr. Johnson, who also represented the petitioner at trial, represented the petitioner on a *pro bono* basis during the post-conviction proceeding.

napping, 22 years for especially aggravated robbery, and 25 years for attempted first degree murder. The court ordered that the 22–year sentences be served concurrently to his life sentence and that the 25–year sentence be served consecutively to the life sentence, for an effective sentence of life plus 25 years. This court affirmed the convictions and the effective sentence on direct appeal, *see State v. Howard Walter Thomas*, No. E2003–02090–CCA–R3–CD, 2005 WL 735040 (Tenn.Crim.App., Knoxville, Aug. 17, 2004), and our supreme court denied the petitioner's application for permission to appeal on October 10, 2005.

The evidence adduced at trial, as summarized by this court on appeal, established that Mr. and Mrs. Cook were traveling from their Wisconsin home to a vacation in North Carolina when they "exited Interstate 275 [in Knoxville] to check their map for directions." *Id.*, slip op. at 2. Mrs. Cook, who was asleep when the couple made their Knoxville stop in a heavy rain storm, testified that as her husband reached for his atlas, she "heard an explosion, followed by another 'pop,' as he slumped over the seat toward her." The perpetrator, whom Mrs. Cook later identified as the petitioner, opened the door, pushed Mr. Cook from the driver's seat, and took control of the van. As the petitioner drove the van back onto the interstate, Mrs. Cook pleaded with him "to release them so she could get medical help for her husband." *Id.*, slip op. at 2–3. The petitioner refused her request and, after driving for approximately 15 to 20 minutes, "exited the interstate and drove to a rural, two-lane road" where he first demanded money from Mrs. Cook and then forced her from the van. *Id.*, slip op. at 3. The petitioner pointed the gun at Mrs. Cook but had difficulty loading it. As Mrs. Cook lay on the ground and the petition-er fumbled with his gun, "a white car then came down the road, shining its lights onto her, which caused the [petitioner] to flee in the van." *Id.*

Although Mrs. Cook was able to provide a description to the police, she was unable to identify the perpetrator from any of the photographs shown to her. When she returned to Wisconsin, Mrs. Cook visited a psychiatrist, who suggested that she undergo hypnosis in order to regain a better recollection of the suspect. *Id.* After several sessions, Mrs. Cook was able to provide enough information for a Wausau County, Wisconsin police sketch artist to produce a composite of the suspect. *Id.*, slip op. at 4. Not until 2000, however, was Mrs. Cook able to identify the petitioner as the perpetrator. After the petitioner was arrested, his photograph appeared alongside Mr. Cook's in a newspaper article, which a friend provided to Mrs. Cook. *Id.* From this photograph, Mrs. Cook positively identified the petitioner. *Id.*

A 2000 lead led Knox County detectives to Atlanta, Georgia, where a tip from Mary Storm led them to the petitioner and Ernest Salyer. *Id.*, slip op. at 5. Ernest Salyer; his mother, Joyce Salyer; his sister, Sammie Salyer; and his wife, Loretta Strange, all provided statements implicating the petitioner in the crime. *Id.* At trial, Ernest Salyer testified that on the morning of the crimes, the petitioner called and asked for a ride. *Id.* When he got into Mr. Salyer's vehicle, the petitioner, who had blood on his jacket and pants, told Mr. Salyer that he had killed a man. *Id.* The petitioner told Mr. Salyer that he " 'shot in a vehicle' " before driving the vehicle to an area on Norris Freeway where he attempted to kill "the woman" but " 'his gun … jammed and a car come and scared him and he took off.' " *Id.*, slip op. at 6. Mr. Salyer's mother washed the petitioner's bloody clothes while the two

young men hid the murder weapon at the home of Mr. Salyer's grandmother. *Id.,* slip op. at 6–7. The petitioner gave a blood-soaked $20 bill to Mr. Salyer's sister, Sammie. *Id.*

Ms. Salyer testified at trial that after learning that the petitioner was responsible for the murder, she gave his clothes to her mother, who burned them. *Id.* She also confirmed that Mr. Salyer and the petitioner had initially hidden the murder weapon at her mother's house. *Id.*

The petitioner, who dyed his hair shortly after the murder, also admitted the killing to Loretta Strange. He showed Ms. Strange where the shooting occurred and explained the crimes in great detail. *Id.,* slip op. at 8.

Following the denial of his application for permission to appeal, the petitioner filed a timely petition for post-conviction relief, alleging:

> (1) Whether state or police action is required for an identification procedure to violate due process under the U.S. Supreme Court's decision in *Neil v. Biggers,* 409 U.S. 188 [93 S.Ct. 375, 34 L.Ed.2d 401] (1972)[,] and its progeny; and
>
> (2) Whether a per se rule excluding testimony at trial from an expert on the reliability of eyewitness testimony violates the due process and compulsory process rights to present a defense and call favorable witnesses recognized by the U.S. Supreme Court in *Chambers v. Mississippi,* 410 U.S. 284 [93 S.Ct. 1038,

35 L.Ed.2d 297] (1973)[,] and its progeny.

Conceding that these issues were identical to those he raised on direct appeal, the petitioner argued that the claims did not qualify as previously determined "because subsequent to their determination on direct appeal, the United States Supreme Court decided the case of *Holmes v. South Carolina,* 547 U.S. [319], 126 S.Ct. 1727 [164 L.Ed.2d 503] [2006] (Alito, J., writing for a unanimous Supreme Court) (holding that arbitrary rules of procedure which impinge upon fundamental right to present a defense are unconstitutional)." Several months later, the petitioner filed a "Notice of Supplemental Authority," claiming that pursuant to our supreme court's decision in *State v. Copeland,* 226 S.W.3d 287 (Tenn.2007), "the *per se* rule which excluded defense evidence on the unreliability of the eye witness identification by Yvonne Cook entitles him [to] relief from his conviction and sentence." [2]

At the hearing on the post-conviction petition, the petitioner presented no evidence and instead relied upon the argument of counsel to establish that because the decisions in *Holmes* and *Copeland* changed the "mode of analysis" on the issues, they had not been previously determined. The post-conviction court took the arguments under advisement and, in a later-filed order detailing its findings, denied post-conviction relief. The court concluded that the issues presented had been previously determined on direct appeal

**2.** In *State v. Coley,* 32 S.W.3d 831 (Tenn. 2000), a majority of our supreme court held that Tennessee Rule of Evidence 702 precluded expert testimony concerning the reliability of eyewitness testimony, observing that "general and unparticularized expert testimony concerning the reliability of eyewitness testimony, which is not specific to the witness whose testimony is in question, does not substantially assist the trier of fact." *Id.* at 838.

In *Copeland,* the supreme court reversed course and overruled *Coley's* general bar on expert testimony concerning the reliability of eyewitness testimony, holding "that the test in *McDaniel [v. CSX Transportation, Inc.,* 955 S.W.2d 257 (Tenn.1997),] is sufficient to allow the trial court to properly evaluate the admissibility of expert testimony on the reliability of eyewitness identification." *Copeland,* 226 S.W.3d at 300.

and that neither *Holmes* nor *Copeland* altered that finding. In addition, the post-conviction court concluded that the petitioner could not establish prejudice given this court's direct appeal finding that even if Mrs. Cook's identification testimony was excluded, the remaining evidence was more than sufficient to support his convictions.

In this appeal, the petitioner again asserts that "the per se rule in effect at the time of the [petitioner's] trial that barred the introduction of expert proof on unreliability of eyewitness identification denied the [petitioner] the rights to due process, compulsory process, present a defense, call favorable witnesses, and a fair trial." The petitioner contends that his claim, which he concedes was raised and argued "beginning at the original trial court and continuing at every step along the appeal process," has not been previously determined because there was no ruling on the merits of the claim after a full and fair hearing. This is true, he claims, because the appropriate methods of analysis "were not yet in existence at the time these claims were initially raised." The petitioner's argument, although novel and well executed, misapprehends the significance of the two cases upon which he relies, *Copeland* and *Holmes*.

▆▆▆ The post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. T.C.A. § 40–30–110(f) (2006). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evi-

dence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578–79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn.Crim.App.1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn.2001).

### I. Previous Determination

Code section 40–30–106(h) provides:

A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing. A full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced any evidence.

T.C.A. § 40–30–106(h) (2006).

The petitioner's claim that due process entitled him to the presentation of expert testimony on the reliability of eyewitness identification was heard and considered by the trial court and by this court on direct appeal. The trial court found that *Coley* barred the admission of this testimony under the rules of evidence and concluded that notwithstanding the evidentiary bar, the petitioner had failed to establish that, pursuant to the test established in *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), the evidence was critical to his defense as required to establish due process entitlement to the evidence.[3] Similarly, when analyzing the petitioner's claim on direct appeal, this court initially concluded that the ruling in *Coley* barred the admission of the evidence

---

**3.** In *Chambers*, the Court held, "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers*, 410 U.S. at 294, 93 S.Ct. at 1045. Accordingly, the Court ruled, the rules of evi-

dence may not be used to "mechanistically" exclude evidence that is "critical" to the presentation of a complete defense. *Id.* at 302, 93 S.Ct. at 1049. Where they do so, a due process violation occurs. *Id.*

under Tennessee Rule of Evidence 702 because it did not substantially assist the trier of fact and because it "invad[ed] the province of the jury in assessing the credibility of the eyewitness identifications." *Howard Walter Thomas,* slip op. at 29. In addition, this court concluded that the petitioner had failed to demonstrate a due process violation because the expert testimony was not critical to his defense. *Id.,* slip op. at 30.

Clearly, the petitioner's due process claim was heard and considered by two courts of competent jurisdiction after a full and fair hearing. The petitioner nevertheless cites *Brian Val Kelley v. State,* No. M2004–01158–CCA–R3–PC, 2005 WL 2255854 (Tenn.Crim.App., Nashville, Sept. 15, 2005), for the proposition that when a new authority affects a previously raised claim, the claim is previously determined for purposes of Code section 40–30–106(h) only "where the direct review employed virtually the same standard as that enunciated in the more recent decision."

In *Brian Val Kelley,* Kelley challenged the sufficiency of the evidence, claiming that he had established the defense of insanity by clear and convincing evidence. *Id.,* slip op. at 9. This court concluded that the issue was previously determined because it had been considered and rejected on direct appeal. *Id.,* slip op. at 10. Notwithstanding this procedural bar, Kelley claimed that the ruling in *State v. Flake,* 88 S.W.3d 540 (Tenn.2002), which clarified the standard of review of the insanity defense, required " 'a reassessment of the proof.' " *Id.* This court first concluded that no "reassessment" was necessary but further stated that even if it were, Kelley would not be entitled to relief because "the direct appeal opinion in the present case employed virtually the same standard as that which was ultimately determined to be appropriate in *Flake.*" *Id.*

The *Kelley* court did not, as the petitioner suggests, hold that the procedural bar of previous determination is inapplicable where there has been a change in the method of analysis on an issue.

■  Because neither *Brian Val Kelley* nor any other decision of this court supports the assertion that a claim raised and decided on direct appeal is previously determined only when it has been considered with the benefit of the most recent case law on the issue, we are constrained to conclude that the petitioner's claim of a due process violation by the exclusion of expert testimony has been previously determined.

Moreover, assuming for the sake of argument that *Brian Val Kelley* supports the petitioner's assertion, the petitioner has still failed to establish that his claim has not been previously determined. Both the trial court and this court utilized the *Chambers* analysis to determine whether the petitioner's due process right to present a defense was circumvented by the trial court's exclusion of the expert testimony. Neither *Holmes* nor *Copeland* altered this analysis.

Although *Copeland* overruled *Coley's* per se ban on the admission of expert testimony on the reliability of eyewitness identification, it did so via the rules of evidence and not via the due process right to present a defense. Indeed, the *Copeland* court focused entirely on Tennessee Rule of Evidence 702, concluding that "the test in *McDaniel [v. CSX Transportation, Inc.,* 955 S.W.2d 257 (Tenn.1997),] is sufficient to allow the trial court to properly evaluate the admissibility of expert testimony on the reliability of eyewitness identification." *Copeland,* 226 S.W.3d at 300. The high court observed that "[t]he essential role of the judge, as the neutral arbiter in the trial, is to govern the admission of the evidence within the rules, permitting

only that expert testimony which substantially assists the jury in its consideration of the issue." *Id.* Thus, the court changed only the manner in which expert testimony on eyewitness identification is analyzed under the Tennessee Rules of Evidence and did not alter appellate review of a claimed due process violation.

In *Holmes,* the United States Supreme Court held that a South Carolina evidentiary rule that prohibited a defendant from presenting evidence of third-party guilt " 'where there is strong evidence of an appellant's guilt, especially where there is strong forensic evidence,' " violated the defendant's constitutional right to present a defense. *Holmes,* 547 U.S. at 324, 126 S.Ct. at 1731. Maligning the rule as "arbitrary," the Court stated that such arbitrary rules infringe upon the right of the criminal defendant " 'to present a complete defense.' " *Id.* (quoting *Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986)). The petitioner contends that the Court denounced all rules that deem a category of evidence as per se inadmissible. Close reading of the opinion, however, reveals that is not the case. Indeed, the Court reaffirmed its previous ruling "excluding all polygraph evidence," noting that the rule was not "arbitrary." *Id.* at 326, 126 S.Ct. at 1732. The problem with the South Carolina rule, as the Court explained, was not that it held a particular category of evidence as inadmissible under any circumstances but that the rule served no legitimate purpose and was disproportionate to the end it was trying to serve, namely preventing the jury from engaging in speculation and conjecture. *Id.* at 331, 126 S.Ct. at 1735. Most important for the petitioner, however, the Court did not alter the analysis to be utilized when considering the defendant's claim that he was denied the right to present a defense.

In consequence, because neither *Copeland* nor *Holmes* changed the analysis for determining a due process violation via the right to present a defense, the previous adverse determination of the petitioner's claim operates as a procedural bar to post-conviction relief.

## II. Retroactive Application of Copeland

█ Although the defendant states in his brief that "the Tennessee Supreme Court's decision in *Copeland* represents a new rule of constitutional criminal law requiring retroactive application," he states in his reply brief that "the core" of his argument "is not for the retroactive application of *Copeland,*" making it unclear whether he desires a ruling on the retroactive application of *Copeland.* Rather than engage in further parsing of the petitioner's pleadings, we simply hold that *Copeland* did not state a new rule of constitutional law that requires retroactive application. *See Joseph Vermeal v. State,* M2007–01676–CCA–R3–PC, slip op. at 10, 2008 WL 2648939 (Tenn.Crim.App., Nashville, July 3, 2008) ("Because the rule in *Copeland* is an evidentiary issue, not a constitutional issue, it does not fall under the constitutional law rule."). As explained above, the *Copeland* court confined its ruling to the admission of evidence under Tennessee Rule of Evidence 702 and did not state a new rule of constitutional law.

## III. Conclusion

Because the petitioner's claim was previously determined at trial and on direct appeal, the post-conviction court did not err by denying post conviction relief.