IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs at Knoxville January 29, 2013

## ROBERT LAMONT MOSS, JR. v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2005-A-434      Mark J. Fishburn, Judge**

_____

**No. M2012-01208-CCA-R3-PC - Filed March 19, 2013**

_____

On October 5, 2005, a Davidson County jury convicted petitioner of aggravated rape, two counts of aggravated kidnapping, and theft over $500 but less than $1,000. The trial court sentenced him to an effective term of seventeen years in the Tennessee Department of Correction. This court affirmed his convictions and sentences on direct appeal. *State v. Robert Lamont Moss, Jr.*, No. M2006-00890-CCA-R3-CD, 2007 WL 4245082, at *9 (Tenn. Crim. App. Dec. 4, 2007), *perm. app. denied* (Tenn. April 7, 2008). Subsequently, petitioner filed petitions for post-conviction relief and writ of error coram nobis. Following a hearing, the post-conviction court denied the post-conviction petition on the merits and the coram nobis petition as time-barred. On appeal, petitioner argues that (1) trial and appellate counsel provided ineffective assistance; (2) his right to due process was denied by the trial court's denial of funds for the defense to hire experts in eyewitness reliability and shoe print identification; and (3) he is entitled to a writ of error coram nobis. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which ALAN E. GLENN and JEFFREY S. BIVINS, JJ., joined.

Chad Davidson, Nashville, Tennessee, for the appellant, Robert Lamont Moss, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Kyle Hixson, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Kathy Morante, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Procedural History and Facts

#### A. Trial

A Davidson County grand jury indicted petitioner for two counts of aggravated kidnapping, one count of aggravated sexual battery, one count of aggravated rape, and one count of theft of property. The parties presented the following evidence, as summarized by this court, at the October 2005 trial:

> The evidence at trial showed that the victim, [P.D.],[1] left work on July 13, 2002, at approximately 11:30 p.m. and arrived at her home on Baxter Avenue in Nashville. A roommate, [E.H.], was not home, and the victim's other roommate, [L.M.], was asleep. The victim drank "a couple of beers" and went to sleep. She awoke when [L.M.] left at approximately 3:00 a.m. for a trip to West Tennessee but fell back asleep shortly thereafter.
>
> At approximately 4:20 a.m., the victim was awakened by someone trying to enter the house. She went to the door, opened the door's blinds, and saw [petitioner], who asked for [L.M.]. The victim had met [petitioner] before when he helped move furniture for [L.M.], so she opened the door. When she did, [petitioner] started choking her. She fell to the ground, and he pulled her up by her hair. He asked her for money, and she told him that it was upstairs. Then, he forced the victim upstairs.
>
> Once upstairs, [petitioner] went through the victim's purse and took approximately $160. He told the victim to tell [L.M.] that "Chaos" was here. [Petitioner] then took a telephone cord, tied the victim's arms behind her back, and put her in a closet. While in the closet, the victim heard [petitioner] ransacking the downstairs of the house. She was able to get loose and tried to escape via "hidden" steps to the attic. However, the victim was unable to "pull [the stairs] up," and [petitioner] saw her and pushed her to the floor onto her back. He ripped her shirt and bra, and pulled her shorts down. He asked her if she had any condoms, and she told him "No." [Petitioner] then made her hold her knees, and he inserted his "hand" into her vagina. He then dragged her into her bedroom, forced her onto the bed, and punched her in the chest

---

[1] It is the policy of this court to protect the identity of victims of sex crimes. We have used initials for the victim's roommates to further protect the identity of the victim.

several times. He asked her where the "kilos" were and told her to tell [L.M.] that "Chaos was [there] for his money." [Petitioner] then dragged her to [L.M.]'s room, "hog-tied" her, ransacked that room, and left. After the victim heard [petitioner's] car drive off, she "laid there and cried and prayed to God and then gradually was able to get loose." She ran to her neighbor's house, and her neighbor called 9-1-1.

The testimony showed that a television, a Play Station II game system, a camera, $170, and two packs of cigarettes were missing from the house. The victim's VCR was also thrown into her front yard and broken. The testimony also showed that the shoes that the defendant wore when arrested were "consistent with the size, shape and tread" of the footprints found in the victim's kitchen. Also, the victim's emergency room doctor testified that the victim's tongue was swollen, and she had bruising around her neck, tenderness to her head, shoulders, chest, and back, and contusions to the front of the vagina.

*Robert Lamont Moss, Jr.*, 2007 WL 4245082, at *1-2. The trial court dismissed the aggravated sexual battery count, and the jury convicted petitioner of aggravated rape, two counts of aggravated kidnapping, and the lesser-included charge of theft over $500 but less than $1,000. The trial court denied petitioner's motion for new trial on March 21, 2006.

Petitioner appealed his convictions and sentences to this court, arguing "that (1) the trial court erred in denying [his] motion to suppress the victim's identification of [him], (2) the trial court erred in allowing the prosecution to cross-examine [him] about prior drug use, and (3) the trial court erred in enhancing three of [his] convictions." *Id.* at *1. This court affirmed petitioner's sentences and convictions on December 4, 2007, and the Tennessee Supreme Court denied his application for permission to appeal on April 7, 2008. *Id.*

### B. Post-Conviction and Error Coram Nobis

Petitioner filed his initial pro se petition for post-conviction relief on June 4, 2008, and he filed amended petitions on August 8, 2008, and November 12, 2008. The post-conviction court appointed counsel, and petitioner filed his final amended petition on May 20, 2009. The post-conviction court held an evidentiary hearing on November 13, 2009. While the post-conviction petition was pending, petitioner filed a petition for writ of error coram nobis on July 23, 2009.

At the post-conviction evidentiary hearing, trial counsel testified that a key issue at petitioner's trial was the identification of petitioner by the victim. At the time of petitioner's

-3-

trial, the case of *State v. Coley*[2] controlled the admissibility of expert testimony regarding eyewitness reliability. Trial counsel believed *Coley* "was wrong," so she petitioned the trial court for funds to hire an expert on cross-racial identification. The trial court denied her request for funds. The trial court also denied her motions to suppress the photograph array and to exclude the expert testimony regarding shoe print evidence.

On cross-examination, trial counsel recalled that the victim testified at trial that her attacker identified himself as "Chaos" and that there was evidence presented that petitioner's street name was "Chaos."

Appellate counsel testified that the supreme court issued its opinion in *State v. Copeland*[3] during the pendency of petitioner's direct appeal. She did not raise the issue of the trial court's denial of funding for expert testimony on eyewitness reliability in her appellate brief, and her understanding was that filing the brief sans the funding issue constituted waiver of the issue. Appellate counsel testified that she might have filed "motions for supplemental authority of issues [she] had raised," but she did not know of a way to raise issues not included in the initial brief. On cross-examination, appellate counsel said that she was not aware of any case law prohibiting shoe print comparison testimony.

The post-conviction court took the matters under advisement. On May 10, 2012, the post-conviction court denied the petition for post-conviction relief on the merits and denied the petition for a writ of error coram nobis as time-barred. This appeal follows.

## II. Analysis

### A. Post-Conviction - Ineffective Assistance of Counsel

Petitioner argues that both trial counsel and appellate counsel provided ineffective assistance of counsel. Specifically, he contends that trial counsel failed to protect his right to a speedy trial and that appellate counsel failed to argue on appeal that the trial court erred by not granting him funds to hire an expert on eyewitness reliability. The State responds that petitioner waived the issue of ineffective assistance of counsel under Tennessee Rule of Appellate Procedure 27(a)(7). We agree with the State.

---

[2] *State v. Coley*, 32 S.W.3d 831, 838 (Tenn. 2000) (holding that expert testimony regarding the reliability of eyewitness testimony was inadmissible per se).

[3] *State v. Copeland*, 226 S.W.3d 287, 299-301 (Tenn. 2007) (overruling *State v. Coley*, 32 S.W.3d 831 (Tenn. 2000)).

-4-

Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure states that an appellant's brief shall contain the following with respect to an argument:

> (A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and

> (B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues)[.]

Tenn. R. App. P. 27(a)(7)(A)-(B). "An issue may be deemed waived, even when it has been specifically raised as an issue, when the brief fails to include an argument satisfying the requirements of Tenn. R. App. P. 27(a)(7)." *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012). Moreover, Rule 10(b) of the Rules of the Court of Criminal Appeals states, "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this Court."

In his brief, petitioner wholly failed to include the standard of review. Furthermore, he makes no attempt to explain how trial counsel failed to protect his right to a speedy trial and makes only a conclusory argument that her failure led to his being unable to produce alibi witnesses at trial. Regarding appellate counsel, petitioner likewise makes only a conclusory argument that appellate counsel's failure to supplement her brief to include an argument based on *Copeland* amounted to ineffective assistance of counsel. We conclude that petitioner has waived the issue of ineffective assistance of counsel under Tenn. R. Crim. P. 10(b).

Nonetheless, to facilitate any further appellate review, we will address the substance of petitioner's arguments. To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2012). A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2012). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the trial court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the trial judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App.1997)). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citations omitted). It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004). The same two-prong test applies to appellate counsel, as well. *Id.* at 886.

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). As our supreme court has previously held:

> "[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

*Id.* at 315-16 (quoting *Baxter*, 523 S.W.2d at 934-35). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of

hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

Regarding trial counsel's performance with respect to the speedy trial issue, we note that the record shows that petitioner was first indicted on December 2, 2002. The State obtained a superseding indictment on February 28, 2005, and the trial court dismissed the original indictment on March 18, 2005. The case was tried in October 2005. The length of time between the original indictment and the trial is troublesome. However, in this case, it is unnecessary for this court to engage in a speedy trial inquiry under *State v. Simmons*, 54 S.W.3d 755 (Tenn. 2001), because petitioner has failed to prove that trial counsel's performance was deficient and that her deficient performance was prejudicial. He presented no evidence at the post-conviction hearing that trial counsel's performance fell below an objective standard of reasonableness and did not even question trial counsel with regard to the speedy trial issue during her testimony. He likewise failed to present the alleged alibi witnesses. Based on the record before this court, we conclude that petitioner has not shown that trial counsel provided ineffective assistance.

Petitioner argues that appellate counsel provided ineffective assistance because she did not supplement her appellate brief to include an argument based on *State v. Copeland*, 226 S.W.3d 287 (Tenn. 2007), which the supreme court decided during the pendency of petitioner's direct appeal to this court. Petitioner cannot show that appellate counsel's failure was prejudicial, however, because *Copeland* did not announce a new constitutional rule requiring retroactive application. *Thomas v. State*, 298 S.W.3d 610, 615-16 (Tenn. Crim. App. 2009). This court has previously ruled that the new common law rule announced in *Copeland* did not apply to a defendant's case when *Copeland* was decided after the end of his trial but before his motion for new trial hearing. *State v. Troy Allen Pruitt*, M2008-02858-CCA-R3-CD, 2010 WL 1741360, at \*8-10 (Tenn. Crim. App. Apr. 28, 2010), *perm. app. denied* (Tenn. Aug. 26, 2010). Following *Thomas* and *Pruitt*, we conclude that *Copeland* would not have applied to petitioner's case because it was decided after his trial.

Therefore, appellate counsel did not provide ineffective assistance of counsel by failing to supplement her appellate brief to include an argument based on *Copeland*.

## B. Due Process

In petitioner's "Issues for Review" section of his brief, he raises this issue:

Was [petitioner] improperly denied the right to due process by the trial court as he was denied funding to retain a proper expert in the field of shoeprint [sic] identification *and* eyewitness identification, *especially in the wake of State v. Copeland*, 226 S.W.3d 287 (Tenn. 2007), which was issued while [petitioner's] appeal was pending and not addressed by either his appellate counsel or the Court of Appeals [sic].

Petitioner never addresses this issue again in the remainder of his brief.[4] Therefore, we conclude that he has waived this issue for failure to comply with Tenn. R. App. P. 27(a)(7) and Tenn. R. Crim. P. 10(b). *See Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012).

## C. Error Coram Nobis

### 1. Standard of Review

The decision to grant or deny a petition for writ of error coram nobis on its merits is left to the sound discretion of the trial court. *Harris v. State*, 301 S.W.3d 141, 144 (Tenn. 2010) (citing *State v. Vasques*, 221 S.W.3d 514, 527-28 (Tenn. 2007)). A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006) (citing *Howell v. State*, 185 S.W.3d 319, 337 (Tenn. 2006)). The writ of error coram nobis is an "extraordinary procedural remedy . . . into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999). Our legislature has limited the relief available through the writ:

The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a

---

[4] We note that the record before this court does not show that petitioner requested funding from the trial court for an expert in shoe print identification.

showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

Tenn. Code Ann. § 40-26-105(b) (2012). To demonstrate he is entitled to coram nobis relief, petitioner must clear several procedural hurdles.

First, the petition for writ of error coram nobis must relate: (1) the grounds and the nature of the newly discovered evidence; (2) why the admissibility of the newly discovered evidence may have resulted in a different judgment had the evidence been admitted at the previous trial; (3) the petitioner was without fault in failing to present the newly discovered evidence at the appropriate time; and (4) the relief sought by the petitioner. *Freshwater v. State*, 160 S.W.3d 548, 553 (Tenn. Crim. App. 1995) (citing *State v. Hart*, 911 S.W.2d 371, 374-75 (Tenn. Crim. App. 1995)).

Next, a petition for writ of error coram nobis must generally be filed within one year after the judgment becomes final. Tenn. Code Ann. § 27-7-103 (2000). "The statute of limitations is computed from the date the judgment of the trial court becomes final, either thirty days after its entry in the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely filed, post-trial motion." *Harris*, 301 S.W.3d at 144. The State must raise the statute of limitations as an affirmative defense. *Id.* When a petition is filed outside of the statute of limitations, the coram nobis court must determine whether due process requires tolling. *Id.* at 145. In doing so, the "court must weigh the petitioner's interest in obtaining a hearing to present a later-arising ground for relief against the State's interest in preventing stale and groundless claims." *Id.* (citing *Workman v. State*, 41 S.W.3d 100, 103 (Tenn. 2001)). A court should utilize the following three-step analysis to balance the competing interests:

(1)     determine when the limitations period would normally have begun to run;

(2)     determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and

(3)     if the grounds are "later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

*Id.* (quoting *Sands v. State*, 903 S.W.2d 297, 301 (Tenn. 1995)). The application of the statute of limitations is a question of law, which we review de novo. *Id.* at 144.

## 2. Petitioner's Claims

On appeal, petitioner argues for the first time that the due process exception to the statute of limitations applies to his petition because "it was through no fault of [petitioner] that *Copeland* came out while his case was under advisement by this Court and had no way of knowing that the legal landscape with regard to expert funding had shifted so significantly." The State responds that petitioner has waived any issue regarding *Copeland* by raising it for the first time on appeal. Petitioner also asserts that counsel's discovery of a report criticizing the state of forensic science constituted newly discovered evidence that justified a new trial because, had the report been available at trial, the evidence regarding shoe print identification would not have been admitted. The State argues that this court should disregard petitioner's ground for relief based on the report criticizing forensic science because the report is not included in the record. We agree with the State.

Petitioner did not address the statute of limitations in his petition, but the State raised the issue in its response. The post-conviction court denied the petition as time-barred, finding that "no exception to the running of the one (1) year statute of limitation has been satisfactorily presented." Initially, we note that limitations period expired on March 21, 2007, one year after the trial court denied petitioner's motion for new trial on March 21, 2006. Petitioner filed his petition for writ of error coram nobis on July 23, 2009. Based on the record before this court, we are constrained to conclude that petitioner has not shown that due process should toll the application of the statute of limitations. He presented no grounds for such tolling in the court below, and petitioner has waived his argument that the supreme court's decision in *Copeland* constituted later-arising grounds by presenting this argument for the first time on appeal. "Ordinarily, issues raised for the first time on appeal are waived." *State v. Alvarado*, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996) (citing *State v. Burtis*, 664 S.W.2d 305, 310 (Tenn. Crim. App. 1983)). Therefore, the post-conviction court properly dismissed the petition for writ of error coram nobis as time-barred.

Even if we were to reach the merits of the petition, petitioner cannot show that newly discovered evidence would result in a different judgment. As previously discussed, *Copeland* does not apply to petitioner's case, but assuming, *arguendo*, that *Copeland* applied and petitioner was able to present an expert on eyewitness reliability, we cannot say that a different judgment would result in light of the strength of the State's case. Furthermore, we cannot reach the merits of petitioner's argument regarding shoe print identification that he based on a report criticizing the state of forensic science because the full report is not

included in the record.[5]  "Where the record is incomplete and does not contain . . . portions of the record upon which the party relies, an appellate court is precluded from considering the issue." *State v. Ballard*, 855 S.W.2d 557, 560-61 (Tenn. 1993).

## CONCLUSION

Following a thorough review of the record and the briefs of the parties, we discern no error and affirm the judgments of the post-conviction court.

_____
ROGER A. PAGE, JUDGE

---

[5] We note that petitioner has attached portions of the report to his brief.  As this court has previously stated, "This Court is, of course, not the proper place to introduce evidence, and appendices to briefs do not constitute evidence to be considered in the review of a case." *Best v. State*, 708 S.W.2d 421, 423 (Tenn. Crim. App. 1985).